

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 19 2013

for CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on Dec. 19 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In the Matter of the Parentage of C.M.F. | No. 88029-8 |
| STATE OF WASHINGTON, | En Banc |
| Plaintiff, | Filed DEC 19 2013 |
| v. | |
| JONATHAN GRAHAM FAIRFAX, Alleged Father, | |
| Respondent, | |
| TRAVIS JAMES RIEHL, Presumed Father, | |
| Defendant, | |
| and | |
| AMANDA CLARE SIMPSON, Mother, | |
| Petitioner. | |

J.M. JOHNSON, J.—Petitioner Amanda Simpson claims the court erred when it treated respondent Jonathan Fairfax's petition to establish a parenting plan as an initial "custody" proceeding under former RCW 26.26.375 (2002) instead of as a modification under RCW 26.09.260 and .270.[1] Because the superior court previously entered a parentage order that qualifies as a custody decree, we reverse the decision of the Court of Appeals and remand for further proceedings. The court must find that there is adequate cause and a change in circumstances as detailed in RCW 26.09.260 and .270 before it can change the custodial designation from Ms. Simpson to Mr. Fairfax.

## FACTS AND PROCEDURAL HISTORY

The State brought a paternity action in 2008 to establish the parentage of C.M.F. Mr. Fairfax was subsequently adjudicated C.M.F.'s father. In the judgment and order determining parentage, the court designated Ms. Simpson the "custodian solely for purpose of other state and federal statutes" and allowed "[e]ither parent . . . [to] move the Family Law Court . . . to establish a residential schedule under this cause number." Clerk's Papers (CP) at 46.

---

[1] The legislature amended RCW 26.09.270 in 2011, adding gender neutral language. It did not otherwise alter this statute. LAWS OF 2011, ch. 336, § 691. Accordingly, we cite to the current version of the statute.

In December 2009, Mr. Fairfax petitioned the court to establish a parenting plan for C.M.F. Trial began on January 11, 2011. After Mr. Fairfax completed his case, Ms. Simpson moved the court to dismiss the petition under CR 12(b)(6) on the grounds that Mr. Fairfax had filed the wrong petition and failed to establish that there was adequate cause to hold a modification hearing. The court denied the motion, finding that the parentage order was not a custody decree and that Ms. Simpson's motion was untimely. Ms. Simpson presented her case, and the court created a final parenting plan that has C.M.F. residing with Mr. Fairfax for the majority of the time and designates Mr. Fairfax the "custodian of the child solely for purposes of all other state and federal statutes . . . ." CP at 232. Ms. Simpson appealed and the Court of Appeals affirmed the trial court.

ISSUES

(1) Whether a parentage order that designates the mother "custodian solely for the purpose of other state and federal statutes" and the primary residential parent is a custody decree that requires the father, when filing a subsequent petition for a parenting plan that would make him the custodian and primary residential parent, to first show there is adequate cause to hold a modification hearing and then, during the hearing, establish the statutory elements necessary for custodial modification.

(2) Whether the parentage court in this case waived the adequate cause and modification requirements by reserving a "residential schedule" in its parentage order.

(3) Whether the 2011 amendments to former RCW 26.26.130(7) (2001) apply in this case to waive the adequate cause and modification requirements.

(4) Whether Mr. Fairfax's improper use of a standard form should have resulted in the case's dismissal.

(5) Whether Ms. Simpson's waiting until after Mr. Fairfax had presented his case to bring her CR 12(b)(6) motion to dismiss waived the threshold requirement of adequate cause and the application of the statutory standards for modification.

STANDARD OF REVIEW

"We review questions of statutory interpretation de novo." *State v. Morales*, 173 Wn.2d 560, 567 n.3, 269 P.3d 263 (2012). We review de novo a ruling on a motion to dismiss a claim under CR 12(b)(6). *Reid v. Pierce County*, 136 Wn.2d 195, 200-01, 961 P.2d 333 (1998). Dismissal under CR 12(b)(6) is only appropriate if "it appears beyond a reasonable doubt that no facts exist that would justify recovery." *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994).

ANALYSIS

A. The Parentage Order is a "Custody Decree" as That Term is Used in RCW 26.09.260 and .270

1. *The Uniform Parentage Act of 2002 and the Parenting Act of 1987*

In 2002, the legislature adopted the then-current version of the Uniform Parentage Act of 2002 (UPA), chapter 26.26 RCW. The UPA governs all determinations of parentage in this state. RCW 26.26.021(1). The UPA provides detailed procedures for courts to follow, covering all facets of the parentage determination process, including the establishment of child support payments.

The Parenting Act of 1987, chapter 26.09 RCW, "fundamentally changed the legal procedures and framework addressing the parent-child relationship in Washington." *State v. Veliz*, 176 Wn.2d 849, 855, 298 P.3d 75 (2013). The act mostly did away with the concepts of "visitation" and "custody" as they tended to "treat children as a prize awarded to one parent and denied the other." *Id.* (citing DRAFTING COMM., 1987 PROPOSED PARENTING ACT: REPLACING THE CONCEPT OF CHILD CUSTODY cmt. at 2 (sponsored by Wash. State Rep. Appelwick) (on file with Wash. State Archives)). Instead, the act promotes the child's relationship with both parents by requiring courts to establish parenting plans.

A parenting plan's overriding purpose is to do what is in the best interest of the child. RCW 26.09.002; *see* RCW 26.09.184(1) (detailing the specific objectives of a parenting plan). The legislature specifically recognized that the child's best interests are normally served "when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." RCW 26.09.002.

Accordingly, in the interest of stability, the legislature allows a court to modify a parenting plan or custody decree pursuant only to RCW 26.09.260 and .270. RCW 26.09.260(1) reads as follows:

> [T]he court shall not modify a prior *custody decree* or a *parenting plan* unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a *substantial change* has occurred in the circumstances of the child or the nonmoving party and that the modification is in the *best interest of the child* and is necessary to serve the best interests of the child.

(Emphasis added.) RCW 26.09.270, in turn, requires a party seeking to modify "a custody decree or parenting plan [to] submit together with [the] motion, an affidavit setting forth facts supporting the requested order or modification . . . ." A court is required to deny the motion unless it finds that

"*adequate cause* for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted." *Id.* (emphasis added). These procedures protect stability by making it more difficult to challenge the status quo.[2] *See In re Parentage of Jannot*, 149 Wn.2d 123, 127-28, 65 P.3d 664 (2003) (noting that extended litigation can be harmful to children and that children have a strong interest in finality).

Notably, the UPA requires courts to make residential provisions for children in a parentage action "[o]n the same basis as provided in chapter 26.09 RCW." Former RCW 26.26.130(7). Moreover, the UPA requires courts wishing to change parenting plans and residential provisions

---

[2] Accordingly, Washington case law is fairly uniform in erring on the side of requiring a party seeking to change a custody decree or a parenting plan to show adequate cause and then meet the statutory requirements for modification. *See, e.g., In re Parentage of M.F.*, 141 Wn. App. 558, 572, 170 P.3d 601 (2007) (holding that it is an abuse of discretion for a court to ignore the specific requirements of RCW 26.09.260); *In re Marriage of Watson*, 132 Wn. App. 222, 238-39, 130 P.3d 915 (2006) (holding that after the family law court had dismissed a modification petition for lack of proof it had no authority to make its own modifications); *In re Custody of Halls*, 126 Wn. App. 599, 608, 109 P.3d 15 (2005) (holding that a petition's failure to comply with any of the procedural requirements of RCW 26.09.270 meant the court did not have jurisdiction to modify the parties' parenting plan); *In re Marriage of Lemke*, 120 Wn. App. 536, 541-42, 85 P.3d 966 (2004) (holding that a court does not have discretion to grant a modification hearing if there is no adequate cause shown); *In re Marriage of Shryock*, 76 Wn. App. 848, 852, 888 P.2d 750 (1995) (holding that procedures relating to the modification of a prior custody decree are statutorily prescribed and mandatory).

established in parentage orders to use the same procedures found in chapter 26.09 RCW. RCW 26.26.160(3).

In the present case, both parties concede that no parenting plan was established at the time of the parentage action. Thus, if the parentage order in this case is a custody decree, then the court did not conduct the parenting plan hearing in accordance with the proper statutory framework. Mr. Fairfax never submitted the affidavits required by RCW 26.09.270, and the court never made a finding of adequate cause. Similarly, during the hearing, the court did not make the necessary finding that there was a substantial change in Ms. Simpson or C.M.F.'s circumstances that would necessitate modification. *See* RCW 26.09.260.

### 2. *Custody Decree Defined*

Neither the UPA nor the Parenting Act of 1987 expressly defines "custody decree." Listing "custody decree" and "parenting plan" separately, the legislature unmistakably recognized that these are two separate and distinct types of orders. *See* RCW 26.09.260(1); *Veliz*, 176 Wn.2d at 861 ("[T]he legislature has distinguished between parenting plans and [UPA] custody orders that include . . . residential provisions.").

When a statutory term is undefined, we apply the term's "'plain and ordinary meaning unless a contrary legislative intent is indicated.'" *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (2011) (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). *Webster's* defines "custody" as "control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 559 (2002). *Webster's* defines "decree" as "an order set forth by one having authority." *Id.* at 588. Thus, a "custody decree" is an authoritative order placing the minor child in the care of someone who has the duty to comply with state law regarding care of a child.

According to this plain language definition, it appears that a parentage order is a custody decree. A parentage order is issued by a court with the authority and responsibility, pursuant to former RCW 26.26.130(7), to entrust the child with some person or persons who will care for the child as required by law. Using this same definition, however, it is also possible to define a parenting plan as a custody decree. Therefore, the plain language definition is inadequate unless we assume the legislature was being redundant. *See In re Dependency of J.W.H.*, 106 Wn. App. 714, 721-22, 24 P.3d 1105 (2001)

(explaining that an ambiguous statute must be interpreted within the context of the entire statutory framework so that none of its language is rendered meaningless or superfluous), *rev'd on other grounds*, 147 Wn.2d 687, 57 P.3d 266 (2002). Fortunately, other sections in chapter 26.09 RCW shed further light on this term.

"Custody decree" is somewhat defined in RCW 26.09.285. RCW 26.09.285 deems the parent with whom the child is scheduled to reside a majority of the time the custodian. The statute makes it clear that this designation has no effect upon the respective parents' duties and rights under the parenting plan and is "[s]olely for the purposes of all other state and federal statutes which require a designation or determination of custody . . . ." *Id.* Since Washington has basically done away with "custody" as that term was previously employed, RCW 26.09.285 seems to be an attempt to allow the Parenting Act of 1987 to successfully work in conjunction with the other federal and state statutes that continue to require a "custody" designation. Obviously, a court has to apply the factors found in RCW 26.09.187, which are intended to protect a child's best interests, to designate a parent the primary caregiver and, therefore, the custodian.

Thus, a "custody decree" is an order that designates one parent a custodian, "[s]olely for the purposes of all other state and federal statutes," as that term is used in RCW 26.09.285. This parent will usually be the parent who has the child in his or her home the majority of the time.

Consequently, the fact that the parentage court in this case did not enter a parenting plan does not mean that it did not enter a custody decree. All the court had to do to make its order a custody decree was to designate Ms. Simpson's residence C.M.F.'s primary residence (which by virtue of RCW 26.09.285 would make Ms. Simpson the custodian) or simply declare Ms. Simpson the custodian "solely" for the purposes of other statutes. Here, the parentage court did both.

a. The Parentage Order is a "Custody Decree"

In the judgment and order determining parentage, the parentage court declared that "[t]he *primary residence* of the child shall be with the mother, who is *designated custodian solely for the purpose of other state and federal statutes*." CP at 63 (emphasis added). Thus, the parentage order was a custody decree. The court should have first determined that there was adequate cause and then, at the hearing, only modified the custody decree to

the extent there were new facts and a substantial change in circumstances that necessitated modification of the custody decree in C.M.F.'s best interests.

Mr. Fairfax argues that the order's qualification of the custodial designation as being "solely for the purpose of other state and federal statutes" means that the parentage order is not a custody decree. Resp't's Suppl. Br. at 12-13. To support this argument, Mr. Fairfax cites *In re Marriage of Kimpel*, 122 Wn. App. 729, 94 P.3d 1022 (2004).

In *Kimpel*, the custodial parent moved for a minor parenting modification under RCW 26.09.260, and the noncustodial parent asked the court to switch the custodial designation because, as a result of the modification, he would have the children for more time than the mother. *Id.* at 731. The court refused his request despite the requirement found in RCW 26.09.285 that the court designate the custodial parent to be the one with whom the children spend the most time. *Id.* The Court of Appeals upheld the superior court because this was a minor modification proceeding, the current arrangement had been in place for six years, the record lacked facts, and it thought that the trial court had broad discretion in this area. *Id.* at 734-35. The court further explained that the custodial designation found in RCW 26.09.285 was "'[s]olely for the purposes of all other state and federal

statutes,'" which meant it simply helped facilitate the administration of the food stamp program, the criminal code (e.g., kidnapping), federal regulations issued on veterans' benefits, Social Security, and statutes related to juvenile justice regarding missing children. *Id.* at 734 & n.1 (quoting RCW 26.09.285).

Mr. Fairfax argues that *Kimpel* shows that the custody designation is detached from a parent's status as the primary residential caretaker, so modification is unnecessary in this case despite the fact that the parentage court made Ms. Simpson's home the primary residence. CP at 63. *See* Resp't's Suppl. Br. at 12. Mr. Fairfax's argument, however, ignores the fact that he not only petitioned the court to make him the primary residential parent, but also asked to be custodian. *See* CP at 76. Moreover, despite the holding in *Kimpel*, it is far from clear that the courts in this state have the authority to contradict RCW 26.09.285 by making the parent who is not the primary residential parent the custodian. *Kimpel* is also distinguishable on the grounds that it was preserving a six-year status quo.

Mr. Fairfax additionally argues that the court's reservation of a "residential schedule" means that the parentage order is not a custody decree. CP at 46. Assuming the reservation is valid, there is no indication that the

existence of a reservation necessarily means that the parentage order is not a custody decree. The court may have intended to reserve a parenting plan/residential schedule so long as the moving party does not wish to switch the primary residential parent/custodial designation.[3] A reservation of a residential schedule does not change the fact that Ms. Simpson was designated custodian in the order.[4]

In sum, if a custody decree is an order that designates a parent custodian "solely" for the purposes of other statutes, and Ms. Simpson was appointed by the court to be custodian "solely" for the purposes of other statutes, then making Mr. Fairfax custodian "solely" for the purposes of other statutes would require modification. To the extent that all parentage orders designate a parent the custodian in this manner or establish one parent's residence as the primary residence, all parentage orders are custody decrees.

---

[3] *See infra* part B.

[4] Admittedly, the superior court's order lacks the findings of fact that should probably accompany an analysis of the factors in chapter 26.09 RCW. Mr. Fairfax, however, did not directly petition the court for a parenting plan, nor did he contest its designation of Ms. Simpson as custodian at the time of the order.

B.  The Court Did Not Waive the Adequate Cause and Modification Requirements by Attempting To Reserve a "Residential Schedule"

Mr. Fairfax argues that the court allowing either party to later "move . . . to establish a residential schedule under this cause number" reserved the issues of C.M.F.'s custody and residence for later, allowing him to avoid the adequate cause and modification requirements. Resp't's Suppl. Br. at 19; CP at 63.  In support of his argument that there was a reservation, Mr. Fairfax points to the court's failure to expressly analyze the factors in RCW 26.09.187. *Id.* To show that the court had the power to make this reservation, Mr. Fairfax cites *In re Marriage of Possinger*, 105 Wn. App. 326, 19 P.3d 1109 (2001); *In re Marriage of Adler*, 131 Wn. App. 717, 129 P.3d 293 (2006); and *In re Marriage of True*, 104 Wn. App. 291, 16 P.3d 646 (2000).

In *Possinger*, 105 Wn. App. at 329, the court adopted the father's parenting plan but provided for review after one year.  At the end of the year, the court modified the residential provisions applying the standards found in RCW 26.09.187 instead of .260. *Id.* at 331-32.  The Court of Appeals upheld the family law court's decision, holding that the Parenting Act of 1987 does not preclude the court from "exercising its traditional equitable power derived from common law to defer permanent decision making with respect to

parenting issues for a specified period of time following entry of the decree of dissolution of marriage." *Id.* at 336-37.

In *Adler*, 131 Wn. App. at 724-26, the Court of Appeals held that divorcing parents could defer entry of a final custody decision and residential schedule by agreement. The parents had agreed that for one year either could request a review of the parenting plan without having to show adequate cause but that during such a review, the court would apply the modification procedures found in RCW 26.09.260. *Id.* at 720-21, 725. When the father requested review and it resulted in a modification, the mother challenged the modification on the grounds that there was no finding of adequate cause. *Id.* at 721-22. She argued that an agreement that waives adequate cause is contrary to public policy as it could potentially be adverse to the interests of the affected children. *Id.* The court upheld the family law court's modification on the grounds that the children's best interests were adequately protected by the family law court's application of higher standards found in RCW 26.09.260. *Id.* at 725.

In *True*, 104 Wn. App. at 294, both parents agreed to a temporary parenting plan that reserved many issues and established a date, roughly a year in the future, for the final resolution of all issues. After the parties signed the

plan, the father asked the court to retain jurisdiction over the case for several months beyond the date that the issues were set to be decided, and the court agreed. *Id.* at 295. The mother objected, but the Court of Appeals upheld the retention of jurisdiction explaining that a "court may retain jurisdiction over the matter for a limited period of time in order to review the efficacy of its decision and to maintain judicial economy following its order." *Id.* at 298. The Court of Appeals explained that unlike a modification, a reservation is not subject to a threshold determination. *Id.*

Mr. Fairfax argues that *Possinger*, *Adler*, and *True* make it clear that it was not error for the court to reserve the residential schedule to be evaluated under RCW 26.09.187, as an initial action, instead of under RCW 26.09.260, as a modification.[5] Certainly, superior courts have broad discretion over matters involving the welfare of children. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993) (citing *In re Marriage of Kovacs*, 121

---

[5] Mr. Fairfax also makes much of an agreement predating his petition that he and Ms. Simpson signed that allegedly permanently designates Mr. Fairfax as the primary residential parent. CP at 88; Resp't's Am. Responsive Br. at 24. Mr. Fairfax argues that even if the parentage court's order was a custody decree, that designation changed when Ms. Simpson signed the agreement. *Id.* This argument fails not only because RCW 26.09.260 and .270 only allow custody changes after a showing of adequate cause and then proof of the modification elements, but also because our case law makes it clear that such agreements are nonbinding. *See, e.g.*, *In re Marriage of Littlefield*, 133 Wn.2d 39, 58, 940 P.2d 1362 (1997) (holding that a private agreement can be a factor but is not enforceable).

Wn.2d 795, 801, 854 P.2d 629 (1993)); *In re Marriage of Cabalquinto*, 100 Wn.2d 325, 327-28, 330, 669 P.2d 886 (1983)). These cases, however, are distinguishable because the family law court in each case retained jurisdiction for only about a year after the entry of the parenting plan. In none of the cited cases is there an open-ended reservation.

To allow a "reservation" of final residential placement to extend indefinitely runs contrary to the overriding policy considerations identified in RCW 26.09.002. At any moment, the noncustodial parent can bring a motion and thereby upset the stability of the child's situation.[6] *See McDole*, 122 Wn.2d at 610 ("Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification."). Because the court's reservation of a residential schedule in this case was open ended, it exceeded the authority provided by former RCW 26.26.130(7) and the common law.

Former RCW 26.26.130(7) required the court to make residential provisions pursuant to chapter 26.09 RCW at the time it entered its parentage order. The court's open ended reservation is improper, so the court did not

---

[6] Mr. Fairfax's own petition was brought roughly a year and a half after entry of the parentage order. CP at 68.

reserve the custody and primary residence issues for a later date despite the lack of RCW 26.09.187 findings in the record. Regardless, even if the reservation were proper, the court only reserved a "residential schedule" which, as explained above, does not necessarily reserve the custodial designation.

C.    The 2011 Amendments to Former RCW 26.26.130(7) Do Not Apply to This Case and Do Not Waive the Adequate Cause and Modification Requirements for Changing a Custody Decree

We presume that statutory amendments apply prospectively, not retroactively. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 507, 198 P.3d 1021 (2009) (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992)). "However, where no constitutional prohibition applies, an amendment may act retroactively if the legislature so intended or if it is curative." *Id.* at 508 (citing *F.D. Processing*, 119 Wn.2d at 460). An amendment is "curative only if it clarifies or technically corrects an ambiguous statute." *F.D. Processing*, 119 Wn.2d at 461. Here, there is no indication that the legislature intended these amendments to apply retroactively. Because these amendments were passed in April, they did not become effective until July. LAWS OF 2011, ch. 283, § 58.

Furthermore, this amendment is not simply curative. The legislature changed former RCW 26.26.130(7) in 2011 to read as follows:

> On the same basis as provided in chapter 26.09 RCW, the court shall make residential provisions with regard to minor children of the parties, except that a parenting plan shall not be required unless requested by a party. If a parenting plan or residential schedule was not entered at the time the order establishing parentage was entered, a parent may move the court for entry of a parenting plan or residential schedule:
>
> (a) By filing a motion and proposed parenting plan or residential schedule . . . : PROVIDED, That at the time of filing the motion less than twenty-four months have passed since entry of the order establishing parentage and that the proposed parenting plan or residential schedule does not change the designation of the parent with whom the child spends the majority of time; or
>
> (b) By filing a petition for modification under RCW 26.09.260 or petition to establish a parenting plan, residential schedule, or residential provisions.

RCW 26.26.130(7) (new language underlined); LAWS OF 2011, ch. 283, § 9. The amendment makes a substantive change by automatically reserving the issue of a parenting plan/residential schedule for a specific time following entry of the parentage order. Moreover, former RCW 26.26.130(7) is not ambiguous. The court had to make residential provisions in the order but did

not have to enter a parenting plan unless a party asked for one. In sum, the amendment appears to have only prospective application.[7]

D.    Mr. Fairfax's Improper Use of the Standard Forms Should Not Have Resulted in His Case's Dismissal

Mr. Fairfax filed a RCW 26.26.375 petition to establish a residential schedule/parenting plan. CP at 68. Under RCW 26.26.375, the petitioner does not have to show adequate cause or meet the statutory requirements for modification because the statute presumes that there is no existing parenting plan or custody decree. Additionally, RCW 26.26.375 requires the petitioner to be an "acknowledged" parent as that term is used in RCW 26.26.330.

---

[7] Regardless, it is doubtful the amendment would assist Mr. Fairfax. Part (a) of the amendment requires a modification petition if the petitioning party, petitioning within 24 months of the entry of the parentage order, wants to change who the child is residing with the majority of the time. Former RCW 26.26.130(7)(a). Part (b), which applies after the 24-month period post entry of the parentage order, allows a party to file a standard nonmodification petition. When the statutory scheme is read as a whole, however, it becomes clear that a modification petition would be required under part (b) if the petitioner wanted to change the primary residence/custodial designation. Former RCW 26.26.130(7)(b); *see State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010) (noting that the court will examine a statute as a whole). It would be inconsistent with the policy rationale underlying the statutory scheme for the legislature to require a modification hearing if a parent seeks to change the primary residence within the first 24 months after the entry of the parentage order, but not require a modification hearing for the same type of change sought after two years. *See McDole*, 122 Wn.2d at 610 (noting that custodial changes are highly disruptive to children and the strong presumption against modification).

Mr. Fairfax is not an "acknowledged" parent. The record does not contain an "acknowledgement" as it is defined in RCW 26.26.305.[8] Mr. Fairfax concedes that his relationship with C.M.F. was established by adjudication. Resp't's Am. Responsive Br. at 9; *see* former RCW 26.26.101(2)(c) (2002). In order to file his RCW 26.26.375 petition, Mr. Fairfax changed or ignored the requirements found in the standard form. *See* CP at 68. RCW 26.26.375 was not the proper basis for his action.

Ms. Simpson argues that it was Mr. Fairfax's use of the wrong statutory basis and accompanying form that caused the court to set the matter for a hearing without first inquiring into whether there was adequate cause to modify the custody decree.[9] Br. of Pet'r at 14. Mr. Fairfax counters that both

---

[8] Among other requirements, to be an acknowledged parent, a valid acknowledgment must be filed with the state registrar and signed by both parents under penalty of perjury. RCW 26.26.305(1)(b), (e).

[9] Ms. Simpson additionally argues that because the court never went through the adequate cause analysis required for modification, that the court lacked subject matter jurisdiction over the action. Br. of Pet'r at 9, 17-18. Ms. Simpson is mistaken. This court has recognized that

> "the superior courts of this state are courts of general jurisdiction and have power to hear and determine all matters legal and equitable in all proceedings known to the common law, except in so far as those have been expressly denied; that the jurisdiction of a court of equity over the persons, as well as the property, of infants has long been recognized; and that the right of the state to exercise guardianship over a child does not depend on a statute asserting that power."

the 2011 amendment to former RCW 26.26.130(7) and the court's reservation of a "residential schedule" allow him to avoid the adequate cause and modification requirements by bringing a standard petition for a parenting plan. Resp't's Suppl. Br. at 17-19; Resp't's Am. Responsive Br. at 24-25. For the reasons discussed above, Mr. Fairfax is mistaken. Even assuming the parentage order was not a custody decree or that the issue of custody was reserved, Mr. Fairfax should not have filed his petition under RCW 26.26.375.

The statutes requiring the use of standard forms, however, are clear that a court should not dismiss a case because a petitioner uses an improper form. RCW 26.18.220(3) ("A party's failure to use the mandatory forms or follow the format rules shall not be a reason to dismiss a case, refuse a filing, or strike a pleading."). Thus, it would have been improper for the trial court, and it would be improper for this court, to dismiss this case solely because Mr. Fairfax used an improper form.

---

*In re Parentage of L.B.*, 155 Wn.2d 679, 697, 122 P.3d 161 (2005) (quoting *In re Welfare of Hudson*, 13 Wn.2d 673, 697-98, 126 P.2d 765 (1942)). In other words, the court had subject matter jurisdiction even if it proceeded under the incorrect statutory framework.

E.  Ms. Simpson's Waiting Until After Fairfax Had Presented His Case in Chief To File Her CR 12(b)(6) Motion Did Not Waive the Threshold Requirements of Adequate Cause and the Application of the Statutory Requirements for Modification

Mr. Fairfax argued to the court that by waiting until after his case to file her CR 12(b)(6) motion, Ms. Simpson had waived any adequate cause and substantial change in circumstances requirements. Verbatim Report of Proceedings (Jan. 12, 2011) Excerpt of Proceedings at 8-9. In denying the motion, the court agreed that it was untimely. *Id.* at 19.

Ms. Simpson's waiting until Mr. Fairfax had presented his case to make the motion was certainly a waste of resources, but CR 12(h)(2) allows a party to bring a motion to dismiss for failure to state a claim at trial on the merits. Moreover, it would run contrary to the public policy embodied in chapter 26.09 RCW (i.e., protect the "best interests of the child") if the custodial parent could waive a statutory requirement meant to protect the stability of the child's life. *See* RCW 26.09.002; *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966 (2004) (explaining that requiring a court to find adequate cause prevents harassment). *But see Adler*, 131 Wn. App. at 721 (finding that the parents could waive the requirement of adequate cause by agreement for a year after entry of the final parenting plan). Thus, Ms. Simpson did not waive the adequate cause protections found in RCW

26.09.270 by waiting until halfway through trial to bring her motion. Instead of dismissing the petition, the court should have required Mr. Fairfax to submit the affidavits required by RCW 26.09.270 and meet his burden of proof that there has been a substantial change in circumstances as required by RCW 26.09.260.

CONCLUSION

We reverse the decision of the Court of Appeals and remand the case to the superior court for further proceedings. The superior court's order is a custody decree, there has been no waiver of the threshold requirement of adequate cause or the application of the statutory requirements for modification to that decree, and Mr. Fairfax's improper use of a standard form does not result in the case's dismissal.

Custody can be taken from Ms. Simpson and transferred to Mr. Fairfax only if the superior court finds that there is adequate cause and a change in circumstances as detailed in RCW 26.09.260 and .270.[10]

---

[10] Accordingly, we deny Mr. Fairfax's request for attorney fees pursuant to RAP 18.1. At the Court of Appeals, Ms. Simpson asked the court for fees pursuant to RAP 10.3(a)(5) for her having to file a motion to strike. We grant her reasonable fees for her work done in preparing and filing her motion.

To hold that parentage orders of this type are not custody decrees would potentially leave thousands of parents and children in relative uncertainty contrary to the legislature's repeated intent. For many parents, the parentage order designating them the primary caregiver is the only legal document governing their relationship with their children and the other parent. If those parentage orders are not custody decrees then these parents could be subjected to petitions for the establishment of parenting plans and residential schedules that change the custodial designation/primary residence of the children involved without the protections found in RCW 26.09.260 and .270. Such petitions could result in hearings (potentially years after the entry of the parentage order) costing time and money, while disrupting the lives of children. Undoubtedly, a disproportionate number of those affected would be already impoverished women receiving state aid. Such parents rely on their designation as "custodian" when acquiring day care services in conjunction with receiving state and federal aid, using police and hospital services, and when enrolling the children in neighborhood schools.

In keeping with the purposes of the Parenting Act of 1987, however, we reinstate the temporary orders in place before the superior court. Dismissing the case outright, with a determination that the parentage order is

a custody decree, could result in C.M.F. being temporarily displaced from her home of the last few years. We preserve the stability of C.M.F.'s environment until this case can be properly and fully resolved. Mr. Fairfax will be allowed to file the affidavits required by RCW 26.09.270 and proceed to a modification hearing governed by RCW 26.09.260 if the superior court finds adequate cause.

Moreover, on remand, if the court finds there is adequate cause and proceeds to conduct a modification hearing, the court will also need to review Ms. Simpson's situation anew. The court should not review de novo the original decree. Instead, the court must focus solely on the suitability of Ms. Simpson's present environment and must maintain Ms. Simpson as C.M.F.'s custodian, unless the court makes findings that modification is in C.M.F.'s best interests.

WE CONCUR:

-28-

No. 88029-8

FAIRHURST, J. (dissenting)—This case presents the question of whether Jonathan Graham Fairfax was required to follow the statutory procedures for modifications, rather than for initial determinations, in seeking a parenting plan for his and Amanda Clare Simpson's common child, C.M.F. The majority concludes that because a prior order establishing Fairfax's parentage designated Simpson as the custodial parent, Fairfax was required to follow the statutory procedures governing modification of custody decrees. Because the majority fails to account for the purposes of the modification statutes and this court's relevant precedent, I respectfully dissent.

The majority correctly determines that the order establishing Fairfax's parentage was not a "parenting plan" within the meaning of RCW 26.09.260(1). However, the majority then determines that the parentage order was a "custody decree" within the meaning of RCW 26.09.260(1) and that Fairfax was required to show adequate cause and substantially changed circumstances in his petition for a parenting plan for C.M.F. It is certainly true that the parentage order could

1

reasonably be deemed a "decree," and it most definitely includes a reference to "custody" of C.M.F. However, that does not end our inquiry.

"When interpreting a statute, our fundamental objective is to determine and give effect to the intent of the legislature." *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). The reasons a party seeking to modify a prior custody decree must show a substantial change in circumstances are twofold: "[T]o discourage harassment of the parent who is awarded custody by the disgruntled parent who is denied it and to assure as much stability as possible in the environment of the child." *In re Habeas Corpus of Rankin*, 76 Wn.2d 533, 537, 458 P.2d 176 (1969). However, regardless of the particular factual scenario, the "primary concern" of any court addressing a child custody issue "is always the welfare of the child." *Id.*

> It would be unrealistic to assume that this concern [for the welfare of the child] can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other.

*Id.* Where a prior custody decree is contested, "it can be assumed that all of the circumstances existing at that time were made known to the court and a sound discretion was exercised." *Id.* (emphasis omitted). However, where a prior custody decree is uncontested, "no such assumption can be indulged." *Id.* Thus the purposes for the initial barriers to modification are no longer controlling. *Id.* at 537-38.

2

This court determined that one need not show changed circumstances to modify an uncontested custody decree long before the original versions of RCWs 26.09.260-.270 were first enacted in 1973. LAWS OF 1973, 1st Ex. Sess., ch. 157, §§ 26-27; *see, e.g., White v. White*, 24 Wn.2d 52, 57, 163 P.2d 137 (1945). However, after these statutes were passed, we reaffirmed the rule that changed circumstances need not be shown to modify an uncontested custody decree. *Timmons v. Timmons*, 94 Wn.2d 594, 598-600, 617 P.2d 1032 (1980).

Rather, the individual seeking to modify the prior decree need only present facts not considered by the court at the time of the prior decree, regardless of when the facts arose, which demonstrate "that modification is 'necessary to serve the best interests of the child[ren]'" and that the court should not "'retain the custodian established by the prior decree' [based on a showing of] agreement, integration, or detriment to health." *Id.* at 599 (first alteration in original) (quoting former RCW 26.09.260(1) (1973)). This rule applies whenever the prior custody decree was uncontested, regardless of whether the decree was entered by default or agreement. *Id.* at 598-99. Though the Court of Appeals suggested otherwise in dictum, it was incorrect. *In re Marriage of Shryock*, 76 Wn. App. 848, 852 n.1, 888 P.2d 750 (1995).

Analogously, this court has also held that modification of child support orders need not be supported by a showing of changed circumstances where the

original order was not based on a court's independent evaluation of the statutory factors. *Pippins v. Jankelson*, 110 Wn.2d 475, 480-82, 754 P.2d 105 (1988) (citing *Timmons*, 94 Wn.2d 594).

It is clear from the record that the custody provision of the parentage order here was uncontested, and the court did not conduct an independent evaluation of the relevant statutory factors. The state of Washington filed the initial petition to establish C.M.F.'s parentage, seeking "reimbursement for support or assistance provided to the child for expenses incurred on behalf of the child." Clerk's Papers (CP) at 8. The parentage order was entered upon the State's motion for summary judgment. CP at 45. There is no indication in the record that this motion was contested—the State's summary judgment motion stated C.M.F.'s custody was undisputed, CP at 31, and the trial court's sole basis for its parentage order was the State's motion, CP at 45, 61. There is no indication the trial court considered any of the factors in RCW 26.09.187(3), which guide the courts' decision making when setting residential provisions. Therefore, under *Timmons*, Fairfax was not required to show adequate cause and substantially changed circumstances.

While the statutes at issue have been modified since *Timmons*, the relevant language has remained consistent. The statutory language considered in *Timmons* provided, in relevant part:

> "The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

*Timmons*, 94 Wn.2d at 597 (quoting former RCW 26.09.260(1)). RCW 26.09.260(1) now provides, in relevant part:

> [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

Absent a showing that our settled precedent is incorrect and harmful, our interpretation of this consistent statutory language should remain consistent. *State v. Abdulle*, 174 Wn.2d 411, 415, 275 P.3d 1113 (2012).

The purposes for requiring a showing of substantially changed circumstances before modifying a prior custody decree do not control where the prior custody decree was uncontested. The prior custody decree at issue here was uncontested. I respectfully dissent.

Fairhurst, J.

Stephens, J.

Wiggins, J.

6