**FILED**
**SEPT 30, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In re the Custody of S.R.                )
                                         )    No. 31373-5-III
KEVIN JAMES                              )
CATHERINE LYLE,                          )
                                         )
            Respondents,                 )
                                         )    PUBLISHED OPINION
      v.                                 )
                                         )
ALICIA McDONALD                          )
JACK ROSMAN                              )
JAMES and DEENA McDONALD,                )
                                         )
            Appellants.                  )

KORSMO, J. — We conclude that when an outside party challenges a third party nonparental child custody order, the "fourth party" must seek to modify the existing custody ruling rather than file a new third party action. We reverse and remand this action for further proceedings.

FACTS

S.R. was born to Alicia Croston (Mother) and Jack Rosman (Father) on November 4, 2004. She resided initially with her mother for two years.[1] At that point, S.R. was moved to the care of Ms. Croston's parents, James and Deena McDonald, due to the fact

---

[1] The father, who works in Alaska, did not reside with the mother and has not sought custody of the child, although he is active in S.R.'s life and has sought occasional visitation.

that S.R.'s asthma acted up badly in the face of her mother's smoking habit. The McDonalds eventually filed a third party custody action and the mother joined it. On November 6, 2008, the court granted a final order granting third party custody to the McDonalds.

Respondents Kevin James and Catherine Lyle filed a nonparental custody petition in late October 2009. Ms. Lyle is Jack Rosman's sister. Both parents and the McDonalds joined the petition and S.R. moved into the James-Lyle home. Due to health concerns and advancing age, the McDonalds believed that S.R. should be with younger parents. Although joining the petition, the mother later filed declarations that disagreed with proposed visitation and stating her intent to eventually take full custody of S.R. The James-Lyle petition focused on deficiencies of the parents and did not address the McDonalds. After finding good cause, the court entered an order granting temporary placement with James and Lyle on January 29, 2010. The order stated that the rights and obligations of the McDonalds under the 2008 order "shall transfer to Kevin James and Catherine Lyle under this order on a temporary basis."

After an allegation that Ms. Croston's boyfriend (and now current husband) molested S.R., the court restricted contact between him and the child. Four months later, Ms. Croston and the McDonalds moved to dismiss the James-Lyle petition. The McDonalds alleged that the James-Lyle petition was improperly filed and sought reinstatement of the 2008 custody order. The McDonalds and the mother both sought to

2

withdraw their joinder with the petition. For relief, the mother sought to have S.R. returned to the McDonalds.

The motions were heard before a court commissioner on September 30, 2010. The commissioner adjusted the residential schedule and permitted the McDonalds and the mother to withdraw their joinder to the James-Lyle petition.[2] He also consolidated the 2009 James-Lyle petition with the 2008 case and denied the motion to dismiss the James-Lyle petition in light of a pending trial on the petition. The commissioner ordered a bonding and attachment study.

The record[3] does not reflect what happened with the then-pending trial, but the court entered on January 24, 2011, findings of fact and conclusions of law in support of a final parenting plan in favor of Mr. James and Ms. Lyle. The order indicates that standing was "by agreement." Section 2.7 of the order, "Best Interest of the Child," focused on the fact that S.R. had not resided with either parent since 2008 and that neither parent was able to consistently perform parental functions. Section 2.8, "Adequate Cause," was left blank. The petition indicated that the mother would show adequate cause by completing a

---

[2] The commissioner also indicated he would permit the father to withdraw his joinder, although the father had not asked to withdraw it and he appeared to have no reason to want to do so.

[3] Respondents' brief indicates that there was no "contested hearing" conducted. Br. of Resp't at 10. A subsequent scheduling order indicates that a trial was scheduled for March 14, 2011.

3

Circle of Security program and could seek modification of the plan to change primary placement. No decree granting the James-Lyle petition was entered.

Five months later, James and Lyle moved to adjust the residential plan in response to S.R. being exposed to secondhand smoke at the McDonalds' residence. Finding no basis for modification, the court did clarify that S.R. was not to be exposed to any secondhand smoke. In November 2011, the parties were back in court on the mother's motion to expand visitation. The motion was denied due to the fact that the therapist S.R. and her mother had been seeing had stepped down.

James and Lyle filed a motion for review of the third party custody order on August 21, 2012. They sought to strike the provision allowing Ms. Croston to seek modification of the parenting plan upon showing significant improvement in her life. Ms. Croston and her parents opposed the motion.

The court heard the motion September 6, 2012. The court indicated that in view of Ms. Croston's failure to progress toward achieving stability in her life and meeting other requirements such as cessation of smoking, it was in the best interests of S.R. to enter a final parenting plan. The court granted the motion to strike the reunification provision of the 2011 order. A new final parenting plan that deleted the reunification provision was filed November 1, 2012. A decree of nonparental custody was filed December 3, 2012.

Ms. Croston, but not her parents, filed a notice of appeal to this court on December 31, 2012. Respondents James and Lyle moved to dismiss, arguing that the appeal was

4

untimely. Our commissioner disagreed, concluding that the appeal was timely taken from the custody decree. Respondents subsequently moved to strike appellant's brief on the basis that she was not an aggrieved party since the relief she sought—reinstatement of the 2008 order and return of custody to the McDonalds—was unavailable because the 2008 order no longer existed and the McDonalds were not party to the appeal. Our commissioner again disagreed and a panel of this court denied a motion to modify that ruling.

## ANALYSIS

Ms. Croston contends that the trial court erred in the process by which it changed custody to James and Lyle, while the respondents contest that view and also argue that Ms. Croston lacks standing to argue to return custody to her parents when they did not appeal. We address the standing issue first before turning to the issues presented by Ms. Croston.

*Standing*

Revising their "aggrieved party" argument, the respondents argue that Ms. Croston has no standing to obtain relief for the McDonalds where they are not pursuing relief themselves. However, the fact that her parents might obtain relief without seeking it if Ms. Croston prevails does not preclude Ms. Croston from seeking to vindicate her own rights. Essentially, she has both first party and, potentially, third party standing in this action.

A party has standing to pursue an action when she is within the zone of interests protected by a statute and has suffered an injury in fact. *Branson v. Port of Seattle*, 152 Wn.2d 862, 875-76, 101 P.3d 67 (2004). In cases of third party standing, Washington courts apply the three factors used by the United States Supreme Court:

> The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, . . . the litigant must have a close relation to the third party, . . . and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (internal citations omitted); *see T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 424 n.6, 138 P.3d 1053 (2006) (citing *Mearns v. Scharbach*, 103 Wn. App. 498, 512, 12 P.3d 1048 (2000)); *State v. Burch*, 65 Wn. App. 828, 837, 830 P.2d 357 (1992).

We have no difficulty discerning that a parent has statutory standing in a nonparental custody case. RCW 26.10.030(2) requires that notice of a child custody proceeding "shall be given to the child's parent, guardian and custodian, who may appear and be heard and may file a responsive pleading." This statute puts the parents within the zone of interests for first party standing.

The remaining question is whether the mother has suffered an injury in fact. That injury is clear here. The effect of the decree is to move custody of S.R. from the care of those to whom Ms. Croston had entrusted her daughter to others not of her choosing. The revised order also limits her ability to reclaim custody of her daughter and also lessens her

visitation. Ms. Croston has shown injury in fact as well as being with the statutory zone of interests. She has standing to pursue this appeal.

The respondents focused their argument largely on third party standing, but we need not address that argument in light of Ms. Croston's personal standing to proceed with the appeal. We do note, however, that she easily would satisfy the first two prongs of the *Powers* third party standing test, although on this record we cannot tell if she could satisfy the third prong. In light of the McDonalds' participation in this case up to the point of appeal, the record does not reflect that there is some hindrance to their continued participation that would entitle Ms. Croston to act on behalf of her parents, but we are unable to foreclose that possibility. The issue, however, is of no consequence to this action since appellant clearly has standing under the statute. However, Ms. Croston does not have the ability to argue issues that might pertain only to her parents and we will ignore claims she makes on their behalf.

Ms. Croston has personal standing to pursue this appeal.

*Changing a Nonparental Custody Order*

This case presents the procedural question of how a "fourth party" should proceed in light of an existing nonparental custody ruling. Washington courts have not decided if the appropriate procedure is to file a new nonparental custody action, as happened here, or

to file to modify an existing order.[4] Although either approach potentially is justifiable under the statutes, we believe that modification best effectuates legislative policy.

Chapter 26.10 RCW sets forth the procedure for nonparental actions for child custody. A nonparental custody petition is available in two circumstances: (1) the child is not in the custody of one of its parents or (2) the petitioner alleges neither parent is a suitable custodian. RCW 26.10.030(1);[5] RCW 26.10.032(1). If a motion for child custody establishes "adequate cause for hearing the motion," the court will set a show cause hearing. RCW 26.10.032(2). The petition can be granted if it is in the best interests of the child to do so. RCW 26.10.100.

Unsurprisingly, the statute also makes provision for modification of nonparental custody orders. "The court shall hear and review petitions for modifications of a parenting plan, custody order, visitation order, or other order governing the residence of a

---

[4] The Washington Supreme Court addressed one case where there were competing nonparental custody petitions, but no existing nonparental custody judgment, in *In re Custody of Brown*, 153 Wn.2d 646, 105 P.3d 991 (2005). An unpublished case from Division Two of this court that is factually similar to this case is *In re Custody of M.W.F.*, noted at 170 Wn. App. 1039, 2012 WL 5354567. There a nonparent also attempted to attack an existing nonparental custody order by filing a new petition and was told that she should have filed a motion to modify the existing judgment. As an unpublished case, we do not rely upon *M.W.F.* as authority. GR 14.1(a).

[5] In part, the relevant sentence provides: "a child custody proceeding is commenced in the superior court by a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10.030(1).

No. 31373-5-III
*In re Custody of S.R.*

child . . . pursuant to chapter 26.09 RCW." RCW 26.10.190(1) (partial). Once again, a party seeking modification proceeds by submitting an affidavit alleging facts and the court, upon determining that "adequate cause" exists, shall set a show cause hearing. RCW 26.10.200.

The modification standards of chapter 26.09 RCW referenced by RCW 26.10.190(1) are found in RCW 26.09.260. In part, subsection (1) provides that

> the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1).

> (2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:
>
> (a) The parents agree to the modification;
>
> (b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
>
> (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.260(2) (partial). Thus, modification is available when a substantial change in circumstances and the best interests of the child require it, and either (a) the parents agree,

9

(b) the child has already integrated into another family, or (c) a detrimental environment dictates that change is necessary.[6]

Instead of following the modification procedure, the respondents brought a new nonparental custody action. On the face of the statute, their decision was understandable because a nonparental custody action is available "if the child is not in the physical custody of one of its parents." RCW 26.10.030(1). However, for several reasons we do not believe that the legislature intended that this approach be used when a nonparental custody order already is in existence. An existing nonparental custody judgment must be modified if a new party seeks custody rather than being superseded (or ignored) by a new, later judgment.

First, we note that legislative policy is in favor of finality of custody determinations. *E.g., In re Marriage of Thompson*, 32 Wn. App. 418, 421, 647 P.2d 1049 (1982) (dissolution statutes seek to (1) maximize finality of custody awards to avoid repeated litigation of custody issues, (2) prevent "ping-pong" custody litigation, and (3) preserve basic policy of custodial continuity); *In re Marriage of Roorda*, 25 Wn. App. 849, 851, 611 P.2d 794 (1980) ("strong presumption" in statutes and case law in favor of custodial continuity and against modification). The legislature, likewise, has stated that one of its policies behind the custody statutes is to limit disruption to the children: "Further, the best

---

[6] The statute also provides a fourth possibility if one parent is in contempt of custody orders or has been convicted of custodial interference. RCW 26.09.260(2)(d).

interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." RCW 26.09.002 (partial). This policy is critically important to our construction of the statute.

RCW 26.10.030(1) is a broadly written statute authorizing a cause of action for those who seek the custody of someone else's children. A petitioner need only show that the child no longer lives with the parents—a factor that will be present in every case where a nonparental custody order has already been entered—or that the parents are unfit, a factor that has little relevance when a child currently is living with someone other than her parents. Every existing nonparental custody decree would satisfy at least one of these factors and, thus, be subject to attack by the next person coming along who desires to gain custody of a child because "good cause" would already exist. RCW 26.10.030(2). At that point the newcomer would only need to show that it was in the best interests of the child to live with him or her rather than the existing custodian. RCW 26.10.100.

This is in contrast to the more stringent requirements for modification of custody orders found in RCW 26.09.260. As noted previously, modification is only available if there has been a substantial change in circumstances, the best interests of the child require it, and one of the factors of RCW 26.09.260(2) are present. By using the nonparental custody petition process, a would-be custodian need only address the best interests test.

11

The legislature could not have intended to bypass the modification process when it designed the noncustodial parent petition. The modification statute would effectively only apply to the parties to the original nonparental custody decree.[7]

We also find support for this approach in *In re Parentage of C.M.F.*, 179 Wn.2d 411, 314 P.3d 1109 (2013). There the father's parentage was established by a parentage order that also set custody of the child with the mother pending either party pursuing a parenting plan. The father subsequently petitioned the court to enter a parenting plan. *Id.* at 416. Our court concluded that the father had followed the wrong procedure. Instead of filing a new petition, he should have used the modification procedures of RCW 26.09.260 to address the child's custody. *Id.* at 420-29. Even though *C.M.F.* involved two parents, to whom the provisions of RCW 26.09.260 automatically apply, it still is instructive by defining a custody decree broadly for purposes of the modification statute. A nonparental custody order is even more clearly a custody decree than a temporary custody order filed in conjunction with a parentage determination.

Use of the nonparental custody action when a nonparental custody order already exists also mistakenly puts the focus on the child's past living conditions rather than the

---

[7] Indeed, nonparental custodians likewise would have incentive to file a new petition rather than seek to modify an existing decree since it would be far easier to establish adequate cause (having done so previously) rather than prove substantial changes to the status quo before addressing what is in the best interests of the child. Only the parents, already having lost custody to the third party, would be forced to follow the modification procedure.

present conditions. The fact that the parents may have been unfit custodians and that the child no longer lives with them—the two bases for a nonparental custody action—are backward looking factors at the time of a fourth party action. A retrial of the child's past should not be a basis for a new proceeding when those issues have already been addressed by the initial nonparental custody action. Instead, the focus should be—as it is in a modification—on the child's current living conditions. Only if there is need should the current custody ruling be reopened. The modification factors look to the present, while the new nonparental custody action factors look to the past.[8] For this reason, too, we believe the legislature did not intend that the nonparental custody action be used in place of a motion to modify.

Finally, allowing a new action is effectively a collateral attack on an existing judgment and would present the danger of conflicting judgments if the trial court is unaware of or fails to act upon the earlier decree. The integrity of the judicial system demands consistency and finality. *See generally* 14A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 35:21, at 510 (2009). The proper way to change an existing judgment is by action to reopen that judgment rather than by an independent action that would have the effect of entering a new decree. If an older judgment is to be altered, it typically should be done within that case and not in a different proceeding.

---

[8] *C.M.F.* likewise directed the trial court on remand to focus on the child's current conditions rather than the past. 179 Wn.2d at 433.

13

No. 31373-5-III
*In re Custody of S.R.*

We conclude that when a nonparental custody order has been entered, anyone desiring a change of custody must move to modify that ruling rather than file another nonparental custody proceeding.[9] It was error for the respondents to proceed by filing a new petition for nonparental custody in this case.

When a party fails to follow the proper procedure, the remedy is a remand for further proceedings to apply the correct process rather than to dismiss an action. *C.M.F.*, 179 Wn.2d at 429-32. On remand, the respondents must make the showing of adequate cause required by the modification statute, RCW 26.09.260. *Id.* at 432. We accordingly do not address Ms. Croston's additional argument that the court also erred in proceeding without first finding adequate cause to do so after she and her parents withdrew their consent to the petition.

Reversed and remanded for further proceedings.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Brown, A.C.J.                                              Fearing, J.

---

[9] Standing to intervene in the existing case normally would be supplied by meeting one of the criteria of RCW 26.09.260(2).

14