IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Parenting and Support of: | ) | |
| | ) | No. 31303-4-III |
| R.T.L., | ) | |
| | ) | |
| child. | ) | UNPUBLISHED OPINION |

SIDDOWAY, C.J. — Nicholette Liedkie claims the trial court erred when it treated Emilio Lopez's petition to establish a parenting plan for their child as an initial custody proceeding rather than as a modification. An Idaho court had previously ordered Mr. Lopez to pay child support; however, no custody order was ever entered. We conclude that because the Idaho child support order was not a custody decree, the trial court did not err in treating Mr. Lopez's petition as an initial custody proceeding. We further hold that it was not error to impute income to Ms. Liedkie for a full 40-hour workweek. For these reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND

R.T.L. was born to Ms. Liedkie and Mr. Lopez on March 22, 2001, in Lewiston, Idaho. Even though they were not married, Mr. Lopez filed an acknowledgment of

paternity. In November 2002, the district court for Nez Perce County, Idaho, entered an order requiring Mr. Lopez to make child support payments in the amount of $251.99 a month and to obtain health insurance for R.T.L. The order did not discuss custody or residential placement.

Initially Mr. Lopez made very few of these payments—the parties agree that Mr. Lopez was not present early on in R.T.L's life.

In 2008, Mr. Lopez received treatment for drug and alcohol addiction. Ms. Liedkie admits that after receiving treatment, Mr. Lopez began consistently making back payments on his child support obligation. Although Ms. Liedkie retained physical custody of R.T.L., Mr. Lopez became actively involved in R.T.L.'s life.

One year later, the State of Idaho arrested and charged Ms. Liedkie with a drug offense. She was bailed out of jail within a day and the charges were dropped about three months later. However, in February 2010 the federal government charged Ms. Liedkie with possession of methamphetamine with intent to distribute. In March 2010, a federal judge sentenced Ms. Liedkie to 30 months in prison. Upon her incarceration, Ms. Liedkie's family began caring for R.T.L.

Promptly after learning of Ms. Liedkie's incarceration, Mr. Lopez filed a pro se petition in the Superior Court for Asotin County asking the court to create a residential

schedule placing R.T.L. with him.[1] Along with the petition, Mr. Lopez filed a summons, a proposed parenting plan, a proposed child support order, a copy of the Idaho child support order, and a copy of Ms. Liedkie's federal indictment. While in prison, Ms. Liedkie filed a response contesting the proposed plan.

On August 9, 2010, the superior court conducted a hearing on the petition for residential placement of R.T.L. The court inquired whether Ms. Liedkie was ever granted legal custody. Mr. Lopez informed the court that there was a child support order, but not a custody order. At a proceeding in September 2010, the court again asked whether there was a custody order. For a second time, Mr. Lopez informed the court that there was never a formal custody determination. The court reviewed the child support order and confirmed that the order did not grant legal custody to anyone.

A temporary order establishing residential placement of R.T.L. with Mr. Lopez while Ms. Liedkie was incarcerated was entered two weeks later.

The trial to address a permanent parenting plan and residential schedule was set for February 2011. Three continuances were granted, and finally, on September 7, 2012, the case was heard. In its oral ruling, the court granted primary residential placement of

---

[1] Washington has jurisdiction over this case because R.T.L. had been residing in Clarkston, Washington at his mother's apartment. Upon her incarceration, R.T.L. continued to reside in Clarkston with his maternal grandfather.

R.T.L. to Mr. Lopez. Ms. Liedkie was granted visitation rights every other weekend during the school year and every other week during the summer.

The trial court also asked each party to submit financial information in order to determine their respective child support obligations. Ms. Liedkie provided the court with pay stubs showing she worked anywhere between 14 to 40 hours a week at a rate of nine dollars an hour. In ordering child support, the court imputed income to her at a rate of nine dollars an hour for forty hours a week, resulting in her obligation to pay Mr. Lopez $184.46 a month in child support.

Ms. Liedkie timely appealed the court's rulings.

## ANALYSIS

Ms. Liedkie challenges the trial court's determination to treat Mr. Lopez's petition as an initial custody determination rather than a custody modification. She further assigns error to the trial court's imputation of income to her for a full 40-hour workweek. We address these arguments in turn.

### *Initial petition for a parenting plan*

Ms. Liedkie argues the court erred in allowing Mr. Lopez's petition to proceed as a petition for an initial parenting plan rather than requiring the petition to meet the heightened requirements for a modification. Mr. Lopez argues that no court had ever entered a parenting plan or residential schedule, and as a result, the court did not err in treating his petition as an initial petition.

A parent who has acknowledged paternity may file a petition to establish a parenting plan or residential schedule. RCW 26.26.375(1)(a). If a custody decree or parenting plan has previously been entered by a court, the petitioning party must observe additional formalities in order to obtain a modification of the existing order. RCW 26.09.260, .270. "[I]n order to secure a hearing, a party moving to modify a custody decree or parenting plan must submit with its motion, 'an affidavit setting forth facts supporting the . . . modification.'" *Link v. Link*, 165 Wn. App. 268, 275, 268 P.3d 963, (2011) (alteration in original) (quoting RCW 26.09.270). "A court is required to deny the motion unless it finds that '*adequate cause* for hearing the motion is established by the affidavits.'" *In re Parentage of C.M.F.*, 179 Wn.2d 411, 419, 314 P.3d 1109 (2013) (quoting RCW 26.09.270). Even if a petitioning party demonstrates adequate cause entitling the party to a hearing,

> the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1). "These procedures protect stability by making it more difficult to challenge the status quo." *C.M.F.*, 179 Wn.2d at 419-20 (footnote omitted).

In *C.M.F.* our Supreme Court was asked to determine whether an adjudicated father was required to follow the procedure for modifying an existing custody order

5

where no parenting plan had ever been entered, but the court order establishing parentage listed the mother as the "custodian . . . solely for purposes of all other state and federal statutes."[2] 179 Wn.2d at 416-17. The court defined "custody decree" for purposes of RCW 26.09.260 as "an order that designates one parent a custodian." *C.M.F* 179 Wn.2d. at 422. As a result, it held that the trial court erred by not following the statutory requirements for modifying a decree. *Id.* at 432.

Here, the parties conceded at a pretrial hearing that no court had ever entered a custody order—the same conclusion the court had reached in earlier hearings:

> JUDGE: . . . Has there ever been an official custody order in the past with regards to RTL?
> LOPEZ: No.
> [LIEDKIE'S COUNSEL]: No, Your Honor.
> JUDGE: Okay. So we're starting from scratch.
> [LIEDKIE'S COUNSEL]: Correct, Your Honor.

Report of Proceedings (RP) at 58. Unlike the parentage order in *C.M.F.*, which made the mother custodian solely for purposes of federal and other state statutes, the 2002 Idaho child support order is entirely silent as to custody. Ms. Liedkie's earlier physical custody of R.T.L. as a practical matter, but not a legal matter, was not enough to require that Mr. Lopez follow the procedure for modification. The trial court did not err in treating Mr. Lopez's petition as an initial petition to establish a parenting plan.

---

[2] In Washington, this is required by statute. The parent with whom the child resides the majority of the time shall be designated in the parenting plan as the custodian for purposes of state and federal statutes. RCW 26.09.285.

*Imputation of income*

Next, Ms. Liedkie contends the court abused its discretion in imputing income to her for purposes of calculating child support. RCW 26.19.071(6) provides that "[t]he court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed." But if a parent is gainfully employed on a full-time basis, a court shall not impute income "unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation." *Id.* Ms. Liedkie contends that no evidence was presented that she was voluntarily underemployed and purposely underemployed to reduce her child support obligation.

We review an award of child support for abuse of discretion. *In re Marriage of Curran*, 26 Wn. App. 108, 110, 611 P.2d 1350 (1980). "An abuse of discretion occurs when a judge exercises his discretion on 'a ground, or to an extent, [that is] clearly untenable or manifestly unreasonable.'" *Id.* (alteration in original) (quoting *In re Marriage of Nicholson*, 17 Wn. App. 110, 114, 561 P.2d 1116 (1977)).

Here, the court determined from reviewing Ms. Liedkie's pay stubs that she was working less than full-time. It was only because she was working less than full-time that the court concluded she was underemployed, and it merely imputed income for a 40-hour workweek at her existing rate of pay. Accordingly, it was not necessary that the court find that she was voluntarily underemployed and purposely underemployed to reduce her

No. 31303-4-III
*In re Parenting & Support of R.T.L.*

child support obligation. The court did not abuse its discretion in imputing full-time income to Ms. Liedkie.

*Attorney fees*

Mr. Lopez requests fees and expenses under RAP 18.9(a). Because the appeal is not frivolous, his request is denied. Mr. Lopez also asks that we exercise our discretion to award fees under RAP 18.1 and RCW 26.09.140. We decline to do so.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Fearing, .J.

8