# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of | No.  51490-7-II |
| ANNA MARIE MORALEZ, | |
| Respondent, | |
| and | |
| MARTIN DOMINGUEZ, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.  —  Martin Dominguez appeals from the superior court order denying his motion to dismiss Anna Marie Moralez's[1] petition for post-secondary educational support for their 18-year-old daughter AD and the court's order granting the petition for post-secondary support. Dominguez's original support obligation was imposed by an administrative support order that continued support as long as AD was under 19 and still a full-time student in a secondary school program; the superior court order changed the administrative support order.

On appeal, Dominguez argues that (1) the superior court erred when it concluded that service by mail was proper under RCW 26.09.175, (2) the superior court had no authority to modify the administrative support order, and (3) the superior court did not have authority to impose post-secondary educational support because the petition for post-secondary educational support

---

[1] Moralez was formerly known as Anna Marie Dean.

was untimely.[2] Both parties also request attorney fees on appeal. We affirm the superior court's orders and deny the parties' requests for attorney fees.

FACTS

I. BACKGROUND

A. DIVISION OF CHILD SUPPORT NOTICE OF FINANCIAL RESPONSIBILITY

Dominguez and Moralez have three daughters together. Their youngest daughter, AD, was born in April 1999. Support for the two older daughters is not at issue.

In October 2006, the Department of Social and Health Services (DSHS) Division of Child Support (DCS) entered a notice and finding of financial responsibility ordering Dominguez to pay back child support and monthly support for all three daughters.[3] The notice stated that this would "become a final order" if the parents did not ask for a hearing within 20 days. Clerk's Papers (CP) at 27. The notice stated that once it became a final order, the child support obligation continued until one of several events occurred, including (1) the child's emancipation, (2) the entry of a court order superseding the DCS order, (3) modification of the DCS order under WAC 388-14A-3925,[4] or (4) the child reaching the age of 18, unless the child is under 19 and "is a full-time student in a secondary school program." CP at 28.

---

[2] Dominguez raises three new arguments in his reply brief: (1) estoppel, (2) laches, and (3) failure to establish a substantial change of circumstances. We do not address these arguments because Dominguez raises them for the first time in a responsive brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[3] The record does not reveal why or how the DCS became involved in the child support issue.

[4] WAC 388-14A-3925 states that the DCS, the custodial parent, or the noncustodial parent can petition and request a hearing before an administrative law judge to prospectively modify an administrative child support order.

The notice also advised the parents that they could petition the superior court to set the child support amounts "at any time." CP at 29. It further advised the parents that they would need to petition the superior court if they wanted to establish or modify a parenting plan because parenting plan issues were beyond the DCS's authority. The notice was silent as to post-secondary educational expenses.

B. 2006 PARENTAGE ACTION AND CR 2A AGREEMENT

Two months after receiving the notice of financial responsibility, Moralez filed a parentage action under former RCW 26.26.375 (2011)[5] and petitioned the superior court for a parenting plan. Dominguez joined in this petition. An agreed temporary parenting plan, which is not part of the record on appeal, was entered the same day.

The "cause of action" section of the joint petition stated, "Support and health insurance coverage for the minor children has been determined administratively by the [DCS] and the Petitioner does not want the court to address child support." CP at 4. But the "relief requested" section of the petition suggested the parties were asking the court to address child support by stating,

The court is requested to enter an order that

---

[5] In 2018, the legislature repealed former RCW 26.26.375. LAWS OF 2018, ch. 6, § 907. Because Moralez filed her petition to modify support in 2017, we cite to the 2011 version of RCW 26.26.375, which was in effect in 2017.

Pursuant to former RCW 26.26.375, once paternity has been acknowledged, the parties may commence a judicial proceeding for a parenting plan on the same basis as provided in chapter 26.09 RCW or child support proceedings as provided in chapter 26.19 RCW. This provision allows the unmarried parents of a child, who would not be covered under chapter 26.09 RCW (governing dissolution proceedings) to bring a cause of action to resolve issues relating to establishing a parenting plan, child support, and health insurance for a minor child. Although the record does not show whether Dominguez and Moralez were ever married, Dominguez does not suggest that Moralez should have brought her petition under any other statute.

> [d]etermines support for the dependent children pursuant to the Washington State Support Schedule and either or both parents be ordered to maintain or provide health insurance coverage for the children and pay extraordinary uninsured costs proportionate to their income.

CP at 5.

In mid-April 2007, after no action was taken in the parentage action for four months, the superior court set the matter for a hearing on May 25. The court advised the parties that if no one appeared for the May 25 hearing, it could dismiss the action. When no one appeared, the court dismissed the matter without prejudice.

Two months later, Moralez moved to vacate the dismissal order. In her motion to vacate, Moralez asked the superior court to "re-open [her] case regarding the parenting plan that was filed Dec. 14, 2006," noting that she had some "outstanding medical bills in regards to [the] care of [her] children." CP at 178-79. On July 18, the court vacated the order of dismissal.

On October 30, 2008, the superior court issued an order to show cause as to why the matter should not be dismissed for want of prosecution. Only Moralez appeared at the show cause hearing. The superior court "found that a final parenting plan had not yet been entered" and set a settlement conference for February 9, 2009. CP at 182.

At the settlement conference, the parties entered into a CR 2A agreement. In this agreement, they "agree[d] to adopt as their final parenting plan the temporary parenting plan attached" with specified changes. CP at 7. The handwritten changes related to visitation and accommodations to one of the children's schedules. The resulting parenting plan is not part of the record on appeal.

## II.  PETITION TO MODIFY CHILD SUPPORT

A.  PETITION TO MODIFY, SERVICE, AND CR 12(B)(6) MOTION

On June 14, 2017, more than eight years after the entry of the CR 2A agreement and more than 10 years after the DCS notice of financial responsibility became a final order, Moralez filed a "Petition to Modify Child Support Order" referring to the administrative support order.  Moralez asserted that the administrative support order did not require post-secondary support[6] and requested that the superior court "modify" the existing administrative support order to require "post-secondary support" for AD.  CP at 35, 37.

The next day, Moralez filed a proof of service by mail stating that two copies of the summons and petition to modify child support had been mailed to Dominguez.  One copy was sent by first class mail and the other was sent by certified mail with a return receipt requested.  The proof of service stated that the mail was sent to Dominguez's "[l]ast known mailing address" in care of his business address.  CP at 52.

Dominguez responded to the petition for modification and filed a motion to dismiss.  In his motion to dismiss, he argued that (1) the superior court did not have the authority to modify the administrative child support order, (2) because the administrative child support order did not provide for post-secondary support and there was no agreement between the parties to provide such support, his support obligation ended when AD "'met the requirements to finish the [secondary school] educational program,'" which he asserted "occurred no later than 2:00 p.m. on June 14, 2017," and (3) service was improper under RCW 26.09.175(2) because there was no child

---

[6] We note that the administrative support order does not state that post-secondary education will not be provided, it is merely silent on the issue of post-secondary support.

support "decree" and even if service by mail was acceptable under RCW 26.09.175(2), the service

was improper because the certified mail was sent to his place of business and signed for by

someone who did not have the authority to sign for it. CP at 79 (alteration in original).

B. SUPERIOR COURT RULING AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

A superior court commissioner heard Moralez's petition to modify child support and

Dominguez's motion to dismiss. No one testified at this hearing, and the transcript of the hearing

is not part of the record on appeal.

On December 5, the commissioner issued the following written findings of fact and

conclusions of law:

FINDINGS OF FACT
1. The DSHS issued a Notice and Finding of Financial Responsibility October 11, 2006, which became a final child support order on or about November 1, 2006.
2. [Moralez] filed a Petition for Parenting Plan December 14,[ ]2006 stating child support had been determined administratively and that she "does not want the court to address child support". An Agreed Temporary Parenting Plan was entered the same day.
3. Child support was not requested at any time after the Petition for Parenting Plan was filed.
4. A C[R] 2A agreement was entered February 9, 2007 converting the temporary order to a final parenting plan and which did not address child support.
5. [AD] turned 18 [in April 2017], but was still dependent until she graduated from high school.
6. The administrative support order was never modified administratively and ended by its terms when the youngest child, [AD], graduated from high school on June 16, 2017.
7. [Moralez] filed her Petition to Modify Child Support Order June 14, 2017.
8. [Moralez] had not previously petitioned to modify child support since the CR 2A Agreement was entered.
9. The Petition was not the first action filed in this state within the meaning of RCW 26.[09].175.[7]

---

[7] This finding refers to "RCW 26.44.175," which does not exist. CP at 135. This was apparently a citation to RCW 26.*09*.175.

10.      [Moralez] served [Dominguez] by mail requiring a return receipt sent to his business address, which was signed by someone other than [Dominguez].

11.      The parties submitted evidence of financial ability to pay and the petitioner submitted evidence of the child's educational expenses.

12.      [Dominguez] did not submit adequate financial information.

Based on the foregoing findings of fact, the court makes the following

CONCLUSIONS OF LAW

1.      [Moralez's] service of the Petition to Modify Child Support Order was proper under RCW 26.09.175.

2.      The Superior Court has jurisdiction to modify an administrative child support order.

3.      The Superior Court has jurisdiction to modify an administrative child support order even if the order terminates before the Superior Court order is entered but after the Petition to Modify is filed.

. . . .

5.      The Superior Court has jurisdiction to set post-secondary support in this case.

6.      The court should determine post-secondary support according to documents submitted separately and filed on this date.

CP at 134-36.

The commissioner also denied Dominguez's motion to dismiss and issued a final order and findings on the petition to modify the child support order. In the order denying the motion to dismiss, the court reiterated that it found "the child graduated High School and completed all necessary educational requirements as of the date of graduation when she was handed her diploma." CP at 149.

In the final order, the commissioner found that it had the "authority to modify the current child support order because it was issued by Washington [S]tate Division of Child Support." CP at 138. The court granted Moralez's request for post-secondary educational support and issued a child support order requiring Dominguez to pay $229.22 a month in support.

Dominguez appeals the denial of his motion to dismiss and the December 5, 2017 final order.

7

ANALYSIS

I. LEGAL PRINCIPLES

We review decisions on motions to dismiss de novo. *In re Parentage of C.M.F.*, 179 Wn.2d 411, 418, 314 P.3d 1109 (2013). "Dismissal under CR 12(b)(6) is only appropriate if 'it appears beyond a reasonable doubt that no facts exist that would justify recovery.'" *C.M.F.*, 179 Wn.2d at 418 (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).

We review child support orders for an abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 46-47. If a court's ruling is based on an erroneous view of the law, it is necessarily an abuse of discretion. *In re Marriage of Herridge*, 169 Wn. App. 290, 296-97, 279 P.3d 956 (2012) (citing *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)).

We review findings of fact for substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003). Unchallenged findings are verities on appeal. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We review conclusions of law to determine whether the findings of fact support the conclusions. *In re Marriage of Myers*, 123 Wn. App. 889, 893, 99 P.3d 398 (2004). We review questions of law de novo. *Herridge*, 169 Wn. App. at 297.

II. SERVICE

Dominguez argues that the trial court erred in concluding that Moralez's service of the petition to modify child support by mail was proper under RCW 26.09.175.[8] He contends that

---

[8] This issue relates to Dominguez's challenge to the superior court's conclusion of law 1.

under RCW 26.09.175(2), personal service was required. Because the petition to modify child support was not the first action filed in this state, we disagree.

We review the sufficiency of service of process de novo. *Scanlan v. Townsend*, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). When a respondent challenges service of process, the petitioner has the initial burden of proof to establish a prima facie case of proper service. *Id.* Once the petitioner has satisfied the initial burden of proof, the party challenging service must show by clear and convincing evidence that service was improper. *Id.* Dominguez does not argue that Moralez failed to establish a prima facie case of proper service.

RCW 26.09.175(2)(a) establishes the service requirements for petitions to modify "order[s] of child support" and provides,

> The petitioner shall serve upon the other party the summons, a copy of the petition, and the worksheets in the form prescribed by the administrator for the courts. If the modification proceeding is the first action filed in this state, service shall be made by personal service. If the decree to be modified was entered in this state, service shall be by personal service or by any form of mail requiring a return receipt. Proof of service shall be filed with the court.

Under RCW 26.09.175(2)(a), personal service is required only when the modification is the first action filed in this state. Dominguez argues that the petition is the first action filed in this state because the administrative proceeding was not an action. This argument ignores the fact that Moralez previously filed a parentage action in which Dominguez joined. Thus, Moralez's petition was not the first action filed in this state and RCW 26.09.175(2)(a) allows service by mail requiring return receipt, which is the process Moralez followed here. Accordingly, this argument fails.

III. SUPERIOR COURT'S AUTHORITY TO MODIFY THE ADMINISTRATIVE SUPPORT ORDER

Dominguez argues that the superior court's "primary error was holding that the superior court could modify an[] administrative order of child support" rather than supersede the

administrative support order with a new court order.[9]  Br. of Appellant at 9.  Moralez responds that this argument elevates "form over substance" because the superior court had the authority to enter a child support order superseding the administrative support order.  Br. of Resp't at 9.  Although the superior court erred when concluding that it could modify a DCS administrative support order, we agree with Moralez and hold that this error was harmless in light of the superior court's authority to enter a child support order superseding the administrative support order.

WAC 388-14A-3925, which establishes who can request modification of an administrative support order and how to seek such modification, provides for modification by an administrative law judge in an administrative procedure, not for modification by the superior court.  Thus, the superior court's conclusion of law stating that the superior court had the "jurisdiction" or authority to "modify" the administrative support order was error.

Despite this error, RCW 74.20A.055(7)[10] expressly states that the superior court has the authority to supersede an administrative support order by court order.  And the notice and finding of financial responsibility acknowledged this authority when it advised the parties that they had the right to petition the court to set child support at any time.

---

[9] This issue relates to the trial court's conclusion of law 2 ("The Superior Court has jurisdiction to modify an administrative child support order.") and conclusion of law 3 ("The Superior Court has jurisdiction to modify an administrative child support order even if the order terminates before the Superior Court order is entered but after the Petition to Modify is filed.").  CP at 135-36.

[10] RCW 74.20A.055(7) provides, "The final administrative order establishing liability and/or future periodic support payments shall be superseded upon entry of a superior court order for support to the extent the superior court order is inconsistent with the administrative order."

The legislature amended RCW 74.20A.055 in 2018 and 2019, but the amendments did not change subsection (7); accordingly, we cite to the current version of the statute.  Laws of 2018, ch. 150, § 107; Laws of 2019, ch. 46, § 5052.

Here, Moralez erred in filing a motion to *modify* the administrative child support order rather than a petition to supersede the administrative child support order. But this is merely an error in the form of the motion, and an error in the form of a motion can be harmless. *In re Marriage of Morris*, 176 Wn. App. 893, 895, 309 P.3d 767 (2013).

Errors in the form of a motion are harmless if, "but for the choice of form, the proceeding below was the procedural and substantive equivalent" of the proper procedure. *Id.* To establish that such an error was harmful, there must be some specific procedural deficiency or harm. *See Id.* at 903.

This case is similar to *Morris*. In *Morris*, the court addressed whether the superior court had the authority to order post-secondary educational support when the parent seeking the support, the mother, requested the support "by filing a motion for adjustment [of child support] instead of a petition for modification." *Id.* at 900, 902-04. The appellate court recognized that the mother should have sought modification rather than an adjustment. *Id.* at 902. But the court held that any error in the form of the petition was harmless, particularly in light of the superior court's "broad equitable powers in family law matters" because the father did "not identify what specific procedures he was deprived of or how he was harmed by any procedural deficiencies" and the mother's error "was based on legitimate confusion." *Id.* at 903-04.

As was the case in *Morris*, Dominguez does not identify any specific procedure of which he was deprived or identify any procedural error that was harmful to him. And no specific deficiency or harm is apparent. Thus, although the superior court did not have the authority to modify the administrative support order, it had the authority to enter an order superseding the

administrative support order and its consideration of Moralez's motion to allow for post-secondary educational support was not harmful.

## IV. TIMELINESS

Dominguez asserts that because there was an "order" rather than a "decree" and there was no written agreement between the parties addressing child support, there was nothing to modify or supersede after AD was "emancipated" when she reached the age of majority.[11]  Br. of Appellant at 9.  We disagree.[12]

RCW 26.09.170(3) provides, "Unless otherwise agreed in writing *or* expressly provided in the decree, provisions for the support of a child are terminated by emancipation[13] of the child or by the death of the parent obligated to support the child."  (Emphasis added.)  If post-majority support is provided for, a court may modify such support as long as the movant files a motion to modify before the "termination of support."  *Balch v. Balch*, 75 Wn. App. 776, 779, 880 P.2d 78 (1994); *In re Marriage of Cota*, 177 Wn. App. 527, 533, 312 P.3d 695 (2013); *see also In re*

---

[11] This argument challenges the superior court's finding of fact 6, which states that the administrative support order terminated when AD graduated from high school on June 16, 2017, and conclusion of law 5, in which the court concluded that it had "jurisdiction to set post-secondary support in this case."  CP at 136.

[12] Dominguez also suggests that AD was no longer a full-time student after 2:00 PM on June 14, at which time he asserts AD had successfully completed her required coursework.  But we do not address whether this was the case because Dominguez merely mentions this in the fact section of his opening brief and he does not cite to any legal authority or present any argument establishing that the alleged completion of coursework, rather than the graduation, marked the end of AD's enrollment as a full-time student in a secondary school.  *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

[13] For purposes of this statute, "emancipation" refers to the age of majority, 18.  *In re Marriage of Gimlett*, 95 Wn.2d 699, 702-04, 629 P.2d 450 (1981).

*Marriage of Crossland*, 49 Wn. App. 874, 746 P.2d 842 (1987) (if a decree provides for post-majority support, modification may be pursued after child attains majority if the motion is filed before support terminates).

Dominguez contends that because there was no written agreement between the parties addressing child support, there was no support obligation to modify or supersede after AD was emancipated when she reached the age of majority. But Dominguez ignores the fact that in the 2006 parenting plan action in which Dominguez joined, the parties agreed to be bound by the administrative support order.[14] In so doing, the parties agreed in writing to the terms of the administrative support order, which extended the duration of support until AD reached the age of 18 unless she was under 19 and still "a full-time student in a secondary school program." CP at 28. Because there was an agreement in writing to extend the child support obligation beyond emancipation, whether there was an actual "decree" is irrelevant.[15]

---

[14] Dominguez himself acknowledges in his reply that there was an agreement to continue support until AD finished high school or turned 19, whichever occurred first. In his reply, he states,

> While there was no support sought or ordered in this case, there was an agreement to address . . . Dominguez'[s] obligation to support their children through the means of the administrative process. That agreement, . . . included support only through the sooner of meeting the "requirements to finish" high school or until age 19, whichever was sooner, after which the child would no longer [be] considered dependent. . . . The parties cemented their agreement on February 9, 2009 when they established the "final parenting plan" by a CR 2A Agreement, . . . at which time they concluded [Moralez's] 2006 Petition; and they implicitly continued to address child support administratively but not through judicial means, complying with that agreement through the majority of all three children.

Reply Br. of Appellant at 18.

[15] Moralez asserts that in her 2006 parentage action she requested that the court address child support because she sought such relief in the "relief requested" section of her petition. Since we hold that there was a written agreement to extend child support beyond emancipation because the parties agreed to be bound by the administrative support order, we do not address this argument.

Because the support obligation did not terminate until AD was no longer "a full-time student in a secondary school program," CP at 28, Moralez could move for post-secondary educational support as long as she did so while AD was still a full-time high school student and the court had the authority to consider Moralez's motion. *Cota*, 177 Wn. App. at 533 ("[I]f a decree expressly provides for post-majority support, a court may modify such support as long as the movant files a motion to modify before the 'termination of support.'") (quoting *Balch*, 75 Wn. App. at 779).

Dominguez also appears to argue that the superior court could not *enter* an order changing the child support obligation after the date the administrative support order expired. But case law clearly requires that the motion for post-secondary school support be filed before the original support obligation is terminated, not that the decision be made or the order filed before the original support obligation ceased. *Balch*, 75 Wn. App. at 779; *Cota*, 177 Wn. App. at 533.

Accordingly, Dominguez's argument that Moralez's motion was untimely fails.

## V. NOTICE

Dominguez asserts that the last-minute filing of the motion for post-secondary support deprived him of notice that his support obligation would continue past AD's 18th birthday in April 2017. This argument fails because the administrative support order clearly stated that his support obligation would continue as long as AD was under 19 and still a full-time secondary school student and that either parent could petition the court for child support "at any time." CP at 29.

## VI. ATTORNEY FEES

Dominguez seeks attorney fees under RCW 26.09.140. We do not award Dominguez fees because he has not shown that he is entitled to relief.

Moralez also seeks attorney fees, but she failed to file an affidavit of financial need within 10 days of consideration on the merits as required under RAP 18.1(c). Thus, we deny her request for attorney fees.

Accordingly, we affirm the superior court and deny both parties attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, C.J.

LEE, J.