FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG 13 AM 9: 25



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 77249-0-I |
| LANCE G. ROUNDS, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRINETTE B. ROUNDS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 13, 2018 |
| | ) | |

BECKER, J. — After an 11-day trial of this marriage dissolution case, the trial judge, the Honorable Douglass North, retained jurisdiction[1] to resolve any future disputes that arise under the parenting plan. We find no abuse of discretion.

The challenge to the court's decision to retain jurisdiction is brought by appellant Brinette Rounds. The trial court retained jurisdiction based on findings detailing Brinette's unfair and manipulative efforts to convince others that her husband, respondent Lance Rounds, was a danger to their children, who were

---

[1] "Jurisdiction" is a term easily misunderstood. As used in this case, it does not refer to personal jurisdiction or subject matter jurisdiction. The retention of jurisdiction means that in the event of a dispute that the case manager cannot resolve, the parties must bring the dispute to Judge North's department of the King County Superior Court.

eight and six years old at the time of trial. Brinette reported to law enforcement agencies that Lance was grooming and abusing the children. She alleged that he had made a pornographic video of the older child. She made the same allegations to the children's pediatrician and the children's church. She falsely reported to Child Protective Services that a preschool teacher believed the daughter was afraid of the father. She falsely informed a parenting evaluator appointed by the court that Lance was going to be criminally charged for possession of child pornography. She obtained a temporary no-contact order against Lance by alleging domestic violence, and she managed to have it reissued periodically for the entire time between their separation in July 2015 and the trial in May 2017. The temporary orders severely curtailed Lance's contact with the children. He was eventually allowed to attend specified events like soccer practices and church and to have professionally supervised visits.

The investigations by police and Child Protective Services demonstrated that Brinette's allegations were unfounded. After a search of Lance's photos and videos, police determined he did not possess any concerning videos or pornographic videos of any children. At trial, witnesses testified that Lance had a close bond with the children and had been the parent primarily responsible for caring for them before Brinette's allegations. The preschool teacher testified that she did not think the daughter was afraid of Lance, that she did not see anything that concerned her about Lance's conduct with the children, and that she never told Brinette she had concerns about Lance.

The court found that no abuse occurred and that the protection order lacked any basis. The court found that Brinette's conduct amounted to abusive use of conflict that "harmed the children by depriving them of a loving father."

Based on Brinette's abusive use of conflict, the court restricted her time with the children, as permitted by RCW 26.09.191(3)(e). The parenting plan limits her residential time to one weeknight per week and every other weekend. Otherwise, the children are to reside with Lance. Lance has sole authority to make major decisions concerning the children. The court appointed a case manager to resolve disputes. The plan states, "If the case manager cannot resolve the dispute, then court action is necessary. Judge North reserves jurisdiction over this matter should return to court be necessary."

On appeal, Brinette does not contest any of the court's findings, and they are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Brinette's appeal presents a single legal issue: that it is an abuse of discretion for a trial court to retain jurisdiction indefinitely. We exercise our discretion to consider this issue despite Brinette's failure to argue it below. In re Marriage of Wendy M., 92 Wn. App. 430, 434, 962 P.2d 130 (1998). The matter involves the interests of minor children and is not clearly resolved by existing case law.

Trial courts have broad discretion over matters involving the welfare of children. In re Parentage of C.M.F., 179 Wn.2d 411, 427, 314 P.3d 1109 (2013). This includes discretion to create parenting plans tailored to the needs of the individuals affected by a particular dissolution. In re Marriage of Chandola, 180

Wn.2d 632, 658, 327 P.3d 644 (2014); In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), cert. denied, 568 U.S. 1090 (2013). The trial court is best situated to assign proper weight to each of the varied factors relevant to a particular case. In re Parentage of Jannot, 149 Wn.2d 123, 127, 65 P.3d 664 (2003).

Judge North's retention of jurisdiction was based on the particular facts of this case. His findings emphasize the highly contentious nature of the parties' relationship, their inability to resolve disputes independently, and Brinette's repeated manipulation of others to gain advantage over Lance in the litigation. It was reasonable for Judge North to anticipate that if Brinette is free to take future parenting plan disputes to a judge who is unfamiliar with her history of manipulation, she is likely to try it again.

Brinette contends the law permits a trial judge to retain decision-making authority only for a short and specified period of time after a decree is entered, and only when issues in a parenting plan are left unresolved. The cases she relies on are concerned with ensuring that a final parenting plan is entered, but they do not prevent the entry of a final parenting plan in which the judge retains the role of resolving future disputes that may arise about how the parenting plan is to be carried out.

Cases that refer to the retaining of jurisdiction for a specified period of time include In re Marriage of Little, 96 Wn.2d 183, 198, 634 P.2d 498 (1981). In Little, no error was found in the trial court's decision to defer final resolution of a custody decision for six months to allow the mother to establish a suitable home.

Similarly, no error was found when a trial court reserved decision on the child's final residential schedule for one year, during which time the parents' schedules were likely to change. In re Marriage of Possinger, 105 Wn. App. 326, 19 P.3d 1109, review denied, 145 Wn.2d 1008 (2001). Although express authority to retain jurisdiction is not provided by statute, authority to defer permanent decision-making with respect to parenting plans "for a specified period of time" comes from the trial court's traditional equitable power derived from common law to act in the best interests of the child. Possinger, 105 Wn. App. at 336-37. No error was found when a trial court approved an agreement by divorcing parents to defer final resolution of the residential schedule for one year. In re Marriage of Adler, 131 Wn. App. 717, 724-26, 129 P.3d 293 (2006), review denied, 158 Wn.2d 1026 (2007). No error was found when a trial court retained jurisdiction for "a specific and limited period of time" over an agreed temporary modification of a parenting plan. In re Marriage of True, 104 Wn. App. 291, 298, 16 P.3d 646 (2000).

In the cases cited above, the retaining of jurisdiction had the effect of delaying the finality of a parenting plan provision for a child's residential schedule. Ordinarily, a dissolution decree and parenting plan are judgments that become final if not appealed within 30 days. A child has a weighty interest in finality, particularly where a child's living arrangements are at stake. Jannot, 149 Wn.2d at 128. The cases nevertheless recognize that delaying finality may be a tenable exercise of discretion, so long as the delay is not indefinite and the best

5

interests of the child are served by waiting to see if a particular residential schedule works out as anticipated before making it final.

The general preference for finality is evident in C.M.F., 179 Wn.2d at 416-17, another case relied on by Brinette. The trial court order at issue granted a father's petition to alter a final parentage order without requiring him to meet the prerequisites for modification of a parenting plan under RCW 26.09.260 and .270. The Supreme Court reversed. Though the parentage order established the mother as custodian and provided for the child to reside with her, it allowed either parent to move to establish a residential schedule. C.M.F., 179 Wn.2d at 416, 425. The Supreme Court referred to this language as an "open ended reservation," contrary to the law's "'strong presumption in favor of custodial continuity and against modification.'" C.M.F., 179 Wn.2d at 427, quoting In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Indefinite reservation of a final decision on residential placement "runs contrary to the overriding policy considerations identified in RCW 26.09.002. At any moment, the noncustodial parent can bring a motion and thereby upset the stability of the child's situation." C.M.F., 179 Wn.2d at 427.

Judge North's decision to retain jurisdiction here does not thwart the policies favoring finality in judgments and stability in a child's residential arrangements. The parenting plan is final. Brinette was able to appeal from it as soon as it was entered. No provisions of the plan were left open. The residential schedule is clearly defined.

Brinette argues that retaining jurisdiction for more than a short period of time undermines the statutory objectives of a parenting plan. These include minimizing a child's exposure to "harmful parental contact" and encouraging parents to meet their responsibilities "through agreements in the permanent parenting plan, rather than by relying on judicial intervention." RCW 26.09.184(1)(e), (f). Judge North's retention of jurisdiction does not conflict with these objectives. Ample evidence supports his conclusion that the parties cannot be counted on to follow their parenting plan peacefully. He designed a dispute resolution system that requires the parties to submit any disagreements to a case manager. A return to Judge North's court will occur only if one of the parties refuses to abide by the case manager's resolution. The fact that the parties must return to Judge North, rather than another judge who is new to the case, does not make it more likely that judicial intervention will occur. The existence of a robust dispute resolution procedure with Judge North at the apex reduces the risk of conflict.

Brinette argues that by retaining jurisdiction, Judge North has prevented her from obtaining a different judge in a modification proceeding. This is not so. A motion to modify a parenting plan under RCW 26.09.260 initiates a new proceeding in which a party is entitled to a new judge as a matter of right upon filing an affidavit of prejudice. RCW 4.12.040; State ex rel. Mauerman v. Superior Court, 44 Wn.2d 828, 829-30, 271 P.2d 435 (1954); In re Parenting Plan of Hall, 184 Wn. App. 676, 678, 339 P.3d 178 (2014); True, 104 Wn. App. at

7

298. Judge North was "powerless" to deprive Brinette of this right. Hall, 184 Wn. App. at 684.

Finally, Brinette claims that approving Judge North's decision to retain jurisdiction will infringe on her right to an impartial judge. She contends Judge North will discredit her testimony if she comes before him in the future with a dispute about the parenting plan. She bases this argument on Judge North's finding that she lacked credibility:

> When looking at the events related by Brinette, Lance and others, as well as several objective pieces of evidence including Brinette's own text messages and emails, it was apparent that Brinette's anxiety created a complete misperception of various events. In this regard, Lance's version of events was far more credible to this court than Brinette's version.

All litigants are guaranteed the right to an impartial judge. Tatham v. Rogers, 170 Wn. App. 76, 93, 283 P.3d 583 (2012). Litigants must submit proof of actual or perceived bias to support a claim of appearance of impartiality. Santos v. Dean, 96 Wn. App. 849, 857, 982 P.2d 632 (1999), review denied, 139 Wn.2d 1026 (2000).

A finding that a party lacks credibility does not mean the judge is biased. Judge North's findings reflect a careful and objective assessment of the strengths and weaknesses of the two parents. He described both as "good parents" in his oral ruling and said, "They both have a real history of doing well with the kids, being engaged with them, paying a lot of attention to them, having a good, bonded relationship with them, and spending time with them." The current record contains no indication of partiality.

In short, we find no basis for reversing Judge North's decision to retain jurisdiction. It was a permissible option under the circumstances.

Lance requests an award of attorney fees and costs for this appeal. The trial court awarded fees to Lance based on intransigence by Brinette. Lance asserts that Brinette has continued to act intransigently on appeal by asserting an unpreserved claim. Pursuing an issue not raised below does not amount to intransigence. Brinette has confined her appeal to a single legal issue that is at least debatable. We decline to award fees on appeal.

Affirmed.

Becker, J.

WE CONCUR:

Appelwick, C.J.

9