IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 80228-3-I |
| WALID KAMAL EL GOHARY, | DIVISION ONE |
| Appellant, | |
| and | UNPUBLISHED OPINION |
| HABIBA EZZAT MOHAMED AMER, | |
| Respondent. | |

CHUN, J. — Walid El Gohary appeals the trial court's Findings and Conclusions about a Marriage and its Final Parenting Plan. El Gohary fails to assign error to the trial court's findings. Even if he had, substantial evidence supports the findings on El Gohary's monthly income; spousal maintenance; awarding the parties' Toyota Prius to Habiba Ezzat Mohamed Amer; and El Gohary's history of domestic violence. The trial court's findings of fact support its conclusion of a lack of direct evidence that Amer engaged in abusive use of conflict. Finally, the trial court acted within its discretion in declining to admit evidence that had not been authenticated and in retaining jurisdiction over the parenting plan for three years to clarify provisions of the plan or resolve disputes as necessary. We affirm.

## I. BACKGROUND

El Gohary and Amer married in 2007 in Egypt. After they married, El

Citations and pin cites are based on the Westlaw online version of the cited material.

Gohary returned to the United States, where he had been living. Amer continued living in Egypt. They had two children together in 2009 and 2017, both born in Egypt. In 2017, Amer and both children moved from Egypt to the United States. In January 2018, the parties separated.

A month later, in February 2018, in a separate matter, Amer filed for a domestic violence protection order against El Gohary. The court granted the protection order on August 8, 2018.

El Gohary filed for dissolution of the marriage in March 2018. Trial took place in May 2019. Both parties were represented by counsel.

On June 11, 2019, the trial court issued five orders: Findings and Conclusions about a Marriage; Final Parenting Plan; Final Divorce Order (Dissolution Decree); Final Child Support Order; and Final Restraining Order.

On June 21, 2019, El Gohary moved the trial court to reconsider several of its orders. Upon reconsideration, the trial court entered a Corrected Child Support Order on July 2, 2019, but denied all other requests for reconsideration.

Representing himself, El Gohary appeals the Findings and Conclusions about a Marriage and the Final Parenting Plan.

## II. ANALYSIS

### A. Exhibits 11 & 12

El Gohary contends that the trial court erred by declining, for lack of foundation, to admit Exhibits 11 and 12 into evidence. The exhibits are transcripts from interviews of Amer by El Gohary's defense attorney in a separate

2

criminal proceeding. We conclude that the trial court acted within its discretion.

We review a trial court's decision on whether to admit evidence for an abuse of discretion. State v. Bradford, 175 Wn. App. 912, 927, 308 P.3d 736 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Id.

ER 901 requires authentication or identification as a condition precedent to admissibility. ER 901(a). This requirement is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. Id.

During El Gohary's case in chief, parenting evaluator Marilyn Liepelt testified that a discrepancy exists between two of Amer's interview statements about whether her head hit the dashboard of a car during an alleged incident of domestic violence. El Gohary then sought to admit the two transcripts. Amer objected on hearsay grounds. She said the transcripts contained out-of-court statements by others who were not present at the trial and could not be cross-examined. She said that the transcripts were being offered for the truth of the matter asserted. She also said that whoever prepared the transcripts was not present at the trial to authenticate it.

El Gohary said he was seeking to admit the transcripts because of the inconsistencies, and that Liepelt relied on statements contained in them in writing her recommendations and report. He said he was not seeking to admit them based on the truth of the matter asserted.

The court ruled that it would allow the witness to testify about what she found significant about the statements and the basis for her opinion. The court said it was not going to admit the transcripts because a foundation had not been laid: the transcripts had not been authenticated and the court did not have a certified copy of them.

El Gohary's attorney did not ask Liepelt any other questions about Amer's statements in the interviews. Later, during cross-examination of Amer, El Gohary's attorney asked her questions about discrepancies between her statements regarding how long El Gohary held her head during the same alleged incident of domestic violence in the car.

El Gohary contends that the trial court should have admitted the two transcripts because they contain contradictory accounts about the allegations of domestic violence. But the trial court did allow El Gohary to question witnesses about discrepancies in the statements.[1] And he made no attempt to authenticate the statements themselves at trial. See ER 901(a) (requiring authentication). The trial court acted within its discretion in declining to admit Exhibits 11 and 12.

---

[1] The trial court also made the following finding regarding discrepancies in Amer's statements:

> The Family Court Services parenting evaluator, Marilyn Liepelt, placed significant weight on discrepancies in the mother's versions of several of the abusive incidents. However, given that there were multiple different interpreters involved in obtaining those statements from the mother, the discrepancies do not appear significant. Moreover, the lack of police reports or medical evidence does not carry much weight. Even here, where we have protective laws and enforcement mechanisms, it is not uncommon for the victims of abuse to go without medical treatment and to forego calling the police. While there was limited testimony on the topic, the testimony that there was suggested that there are additional reasons why a victim might not make a report in Egypt.

B.  Calculation of El Gohary's monthly income and child support payments

El Gohary says that the trial court erred by calculating that his monthly income was $5,500 per month.  We disagree.

If a party does not challenge a trial court's finding, we treat the finding as a verity on appeal.  In the Matter of the Estate of Lint, 135 Wn.2d 518, 532-33, 957 P.2d 755 (1998).  If a party challenges a finding, we determine whether substantial evidence supports it.  In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).  Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.  Id.  We then determine whether the findings of fact (either unchallenged or supported by substantial evidence) support the trial court's conclusions of law.  Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999).  We do not review credibility determinations, which we leave to the trier of fact.  In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

The court issued findings explaining that El Gohary's gross monthly income was $8,500 and his legitimate monthly business expenses were about $3,000:

> The father's gross income from his business is approximately $8,500 per month.  It is difficult to determine what his business expenses are because he has used one bank account for all of his expenses.  In addition, he is now engaged to, and living with, his employee, Ms. Hessen, so her wages, payment to her for rent, and repayment of funds she has loaned him to pay for attorney's fees and supervised visits are all paid from the same bank account.
>
> While the court could not determine the father's legitimate business expenses with precision, it appears that he has approximately

$3,000 per month in expenses, including wages paid to Ms. Hessen in 2018.

The court found El Gohary not credible about "his business expenses, including the amount he pays to Ms. Hessen" and "his relationship with Ms. Hessen (he made various representations to the evaluators and the court)."

El Gohary fails to assign error to these findings. The findings support a calculation that El Gohary's monthly income was $5,500 per month. We may affirm on that basis. See Lint, 135 Wn.2d at 532-33.

Even if El Gohary did assign error, substantial evidence supports the findings. For 2018, El Gohary's tax form 1099-MISC shows an income of $105,799.30, or $8,816.61 per month. In 2017, El Gohary's tax return shows a gross business income of $97,921, or $8,160.08 per month. Since those were the two most recent years at the time of trial, substantial evidence supports the court's finding that El Gohary's gross business income was approximately $8,500.

As for business expenses, El Gohary's 2016 tax return shows business expenses of $36,412, or about $3,000 per month. His 2017 tax return reports a sharp increase in business expenses to $76,342, or about $6,361.83 per month. This increase was largely because of a $41,000 increase in the amount El Gohary claimed for "contract labor," i.e., the amounts he paid to Hessen—his fiancée and only employee. El Gohary testified that he paid Hessen $1,000 per week in 2017. He testified that he had not yet filed a 2018 tax return at the time of trial but had continued to pay Hessen various amounts of money as an

employee even after they entered into a dating relationship around mid-2018. But the court specifically found El Gohary not credible about his business expenses, including the amount he pays to Hessen. As mentioned above, we defer to the trial court on issues of credibility. See Greene, 97 Wn. App. at 714. Thus, his challenge to these business expense findings is unpersuasive. Substantial evidence supports the court's finding about El Gohary's monthly gross income from his business and business expenses. These findings support the calculation of a monthly net income of $5,500.

El Gohary also contends that because the trial court used his incorrect monthly income to calculate his child support payments, the trial court also miscalculated his child support payments. El Gohary failed to appeal the Final Child Support Order or the Corrected Child Support Order. Even if he had, as detailed above, we affirm the trial court's findings about El Gohary's monthly income; and he offers no other basis to challenge his child support payments.

C. Spousal Maintenance

El Gohary contends that the trial court erred by awarding spousal maintenance to Amer. We review a trial court's award of spousal maintenance award for abuse of discretion. In re Marriage of Zahm, 138 Wn. 2d 213, 226, 978 P.2d 498 (1999). Here, the trial court acted within its discretion.

In a proceeding for dissolution of marriage, the court may grant a maintenance order for either spouse. RCW 26.09.090. The applicable statute

includes a non-exclusive list of factors for the court to consider in awarding spousal maintenance:

> The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regarding to misconduct, after considering all relevant factors including but not limited to:
>
> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage . . .;
>
> (d) The duration of the marriage . . .;
>
> (e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance;
>
> (f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090.

The trial court ordered El Gohary to pay Amer spousal maintenance in the amount of $1,000 per month for two years.[2]  The court concluded that it should order spousal maintenance because Amer had the need for support and El Gohary had the ability to pay.

---

[2] El Gohary says incorrectly that the trial court awarded Amer spousal maintenance for a period of three years.  We also note that the amount and duration of spousal maintenance is listed only in the Final Divorce Order (Dissolution Decree), which El Gohary did not appeal.  But because the Findings and Conclusions about a Marriage do state that the court should award spousal support and includes the supporting findings, we address the issue.

The court issued findings regarding spousal support, addressing the factors in RCW 26.09.090:

> The Court has considered the relevant factors, including all of the factors under RCW 26.09.090. This is a 10-year marriage. The wife clearly has a need in that she has not been employed outside the home on a regular basis for many years or at any time since coming to the United States, has very limited English-speaking ability, and has no financial resources. She is now taking English classes and should be able to obtain employment within two years, at which point [the parties' daughter] will likely be in preschool or Headstart so that the daycare costs will be lower. Although the husband does not have a large income, he has run a successful business for many years and, relative to the wife, he has the ability to pay.

El Gohary fails to assign error to these findings. The findings support the trial court's award of spousal maintenance to Amer. We may affirm on that basis. See Lint, 135 Wn.2d at 532-33.

Even if El Gohary did assign error, substantial evidence supports the findings. El Gohary's tax returns, bank account statements, and other financial evidence supports that El Gohary has run a successful business and has the ability to pay relative to Amer. El Gohary's petition for dissolution, Amer's response, and the testimony of both parties supports that this was a ten-year marriage. Amer's testimony supports that she had never worked in the United States, was not working at the time of trial, and was taking in English classes so that she could get a job. Amer's testimony about her expenses and the fact that she had no other income besides child support also supports a finding that she needs approximately the awarded spousal maintenance. The trial court's findings are supported by substantial evidence and support the trial court's

9

conclusion to grant Amer spousal maintenance in the amount of $1,000 per month for two years.

El Gohary says that the court awarded one of his two work vehicles to Amer, thus impairing his ability to earn income and pay spousal maintenance. But as detailed in the next section, El Gohary concedes that Amer returned the vehicle to him after four months, and the trial court found that he had been readily able to acquire new vehicles.

The findings quoted above about spousal maintenance, along with the court's other financial resource findings also unchallenged by El Gohary, support an award of spousal maintenance to Amer. The court did not abuse its discretion in awarding spousal maintenance to Amer.

D. Property division

El Gohary contends that the trial court erred by awarding the 2013 Toyota Prius to Amer. A party challenging a property distribution must show that the trial court abused its discretion. In re Marriage of Gillespie, 89 Wn. App. 390, 398, 948 P.2d 1338 (1997). The trial court acted within its discretion.

The court found that the Prius was community property. The court's findings also provide specific reasons for awarding the Prius to Amer and addressed El Gohary's arguments about the car:

> The wife has requested that she be awarded the 2013 Prius. The husband opposes that request because she does not have a driver's license and has previously rejected his suggestion that she go to driving school and obtain a license. The wife's decisions about obtaining a driver's license while living in Egypt are likely governed by very different factors, and have little bearing on the decisions she makes now. She has testified credibly that she intends to learn to

10

drive and to obtain a license. Awarding her the 2013 Prius may be her only opportunity to own a car since her income is likely to be insufficient to obtain a car loan for a considerable period of time.

It is fair and equitable to award the 2013 Prius to the wife, along with its accompanying debt, as she requests.

El Gohary fails to assign error to these findings. The findings support the trial court's awarding the Prius to Amer. We may affirm on that basis. See Lint, 135 Wn.2d at 532-33. Even if El Gohary did assign error, Amer's testimony that she was planning to learn how to drive, which the court found credible, supports the trial court's findings.

El Gohary says that the Prius is a business vehicle that he uses in his medical courier business, because it is modified with a refrigeration system to allow him to maintain the required temperature to transport sensitive medical items. El Gohary contends that his income depends on the two business vehicles he owns, and when the court awarded one of them to the wife, it effectively cut his income in half.

We are unpersuaded by El Gohary's arguments. First, he concedes on appeal that Amer returned the Prius to him after only four months. And even if Amer had not returned the Prius, El Gohary made the same arguments to the trial court in his motion for reconsideration and the trial court denied it,[3] saying that he had been readily able to acquire new vehicles:

Mr. El Gohary requests that the court reverse its award of the 2013 Prius to Ms. Amer, arguing that it is a business asset and that his business income will be cut in half with the loss of the Prius. The evidence in the record reflects that Mr. El Gohary has had a series of vehicles that had been used in the business and that he has been readily able to acquire vehicles when he has crashed one vehicle or

_____

[3] El Gohary did not appeal the trial court's denial of his motion to reconsider.

when he has wanted to add a vehicle. The evidence also reflects that Mr. El Gohary intermingled business and community assets and used business vehicles for personal purposes. Moreover, the court's order permits Mr. El Gohary to preserve that particular vehicle by providing Ms. Amer with another similar vehicle.

The trial court did not abuse its discretion in awarding the Prius to Amer.

E. Finding of history of domestic violence

El Gohary says the trial court erred in finding that he had a history of acts of domestic violence.[4] We disagree.

A permanent parenting plan must not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in a history of acts of domestic violence as defined in RCW 26.50.010(3). RCW 26.09.191(1). Domestic violence is defined as "(a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member." Former RCW 26.50.010(3)(b) (2015).

The parenting plan states that "Walid El Gohary has a history of domestic violence as defined in RCW 26.50.010(1)." The parenting plan states that major decision-making must be limited because El Gohary has this problem.

The court made specific findings of domestic violence:

---

[4] El Gohary's assignments of error 6 and 8 refer to a "ten year restraining order" and a "domestic violence based restraining order." But his argument in the corresponding sections of the brief focuses on the finding of a history of acts of domestic violence under RCW 26.09.191. If El Gohary is trying to challenge the Final Restraining Order issued by the court on June 11, 2019, we reject his challenge because he failed to appeal it.

> Notwithstanding some questions about the mother's credibility, the court finds that there has been domestic violence by the father against the mother to which [A.M., the parties' son] has been exposed. This finding is supported by the fact that during supervised visits the father . . . made threats to slap [A.M.] so hard he would forget his name and actually did slap [A.M.]. There are other statements that the father made both during his testimony and to the Family Court Services social workers suggesting a pattern of coercive control.

El Gohary fails to assign error to these findings and we may affirm on that basis. See Lint, 135 Wn.2d at 532-33.

Even if El Gohary had assigned error to the findings quoted above about domestic violence, substantial evidence support the court's findings. As for the court's finding that El Gohary threatened and slapped his son during a supervised visit, the supervisor's written report states that at a supervised visit with his children on December 15, 2018, El Gohary told his son that "if you get up I will slap your face so hard you forget your own name." El Gohary then "put his left hand on [A.M.]'s jaw and slaps [A.M.]'s cheek with his right hand. [A.M.] drops his head to the table and is sobbing." El Gohary testified that he never hit his son, but "covered his face with my left hand and I slapped my left hand over my right hand." But the trial court specifically found El Gohary not credible regarding "[t]he nature of his slap of [A.M.] (claimed that [he] hit own hand)." We defer to the trial court on issues of credibility. See Greene, 97 Wn. App. at 714.

As for acts of domestic violence by El Gohary towards Amer, a 12-page domestic violence assessment by a Family Court Services social worker summarized alleged acts of domestic violence committed by El Gohary against Amer and concluded that "it appears more likely than not that the father engaged

in a pattern of behavior consistent with acts of domestic violence and coercive control and as such the mother's [domestic violence protection order] should be granted and include the children." The parenting plan evaluation states that, when interviewed, Amer reported various incidents of domestic violence, some of which their son had been exposed to, including three beatings in 2016 and an incident involving choking in 2017. Amer testified at trial that El Gohary beat and choked her. Although the trial court acknowledged some credibility concerns about Amer, her testimony that El Gohary committed acts of domestic violence against her was not an area where the court found her not credible. See Greene, 97 Wn. App. at 714 (we defer to trial court on issues of credibility). Substantial evidence supports the court's finding that there had been domestic violence by El Gohary. The court's findings support its conclusion that El Gohary had a history of acts of domestic violence.

F. Abusive use of conflict

El Gohary says the trial court erred by not imposing limitations on Amer based on abusive use of conflict. We disagree.

"A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan" if the following factor exists: "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

The trial court concluded that there was not enough direct evidence to make a finding that Amer engaged in abusive use of conflict:

> [A.M.] is, at this point, estranged/alienated from his father. It appears that that has been caused by a combination of behavior by the father that has caused estrangement and the mother involving the child in conflict. [A.M.]'s experience of his father's abusive conduct is undoubtedly compounded by the fact that he spent such a limited amount of time with his father during the years that the mother was residing in Egypt and so had less of a positive foundation to build on.

> Because there are multiple possible explanations for [A.M.]'s conflicted conduct towards his father and his conduct during the supervised visits, the court does not find that there is enough direct evidence to make a finding that the mother has engaged in abusive use of conflict.

El Gohary fails to assign error to these findings; we may affirm on that basis. See Lint, 135 Wn.2d at 532-33.

Even if El Gohary did assign error, the findings are supported by substantial evidence. Evidence documenting El Gohary's abusive conduct toward Amer and her son is detailed in the section above. That Amer and both children lived in Egypt until 2017 was undisputed. The parenting plan evaluation written by social worker Marilyn Liepelt summarizes behavior by El Gohary that would cause estrangement, as well as behavior by Amer involving their son in conflict. Although the trial court acknowledged credibility concerns about Amer, it ultimately determined, after weighing the evidence, that there was not enough direct evidence that Amer had engaged in an abusive use of conflict. We defer to the trial court. See In re Marriage of Woffinden, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982) (we defer to the trial court because it its unique opportunity to observe the parties, determine their credibility, and sort out conflicting evidence).

15

G. Protection order

El Gohary says that the trial court erred by not vacating a protection order at trial. We disagree.

In a separate case, on August 8, 2018, King County Superior Court entered a protection order against El Gohary and in favor of Amer. The protection order was set to expire on August 8, 2019, two months after the Findings and Conclusions about a Marriage were entered. Amer requested that the court renew the protection order as part of this case. The court declined to either terminate or renew the protection order: "The court should neither terminate nor renew the *Order for Protection*. The court finds that the father had proven by a preponderance of the evidence that he is unlikely to engage in further acts of domestic violence."

"[W]here only moot questions or abstract propositions are involved . . . the appeal . . . should be dismissed." Hart v. Dep't of Soc. & Health Servs., 111 Wn.2d 445, 447, 759 P.2d 1206 (1988) (alterations in original) (quoting Sorsenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). We will review moot issues only if they are of "continuing and substantial public interest." Hart, 111 Wn.2d at 447.

This issue is moot because the protection order was set to expire on August 8, 2019—over a year ago. El Gohary does not allege, nor does he present any evidence, that the protection order is still in effect. El Gohary's claim

does not meet the "continuing and substantial public interest" standard. We decline to review this issue further because it is moot.

H. Retaining jurisdiction

El Gohary contends that the trial court erred by retaining jurisdiction over the parenting plan for three years because it failed to enter findings of fact on the record as to why it retained jurisdiction. We conclude the trial court acted within its discretion.

"Although express authority to retain jurisdiction is not provided by statute, authority to defer permanent decision-making with respect to parenting plans 'for a specified period of time' comes from the trial court's traditional equitable power derived from common law to act in the best interests of the child." In re Marriage of Rounds, 4 Wn. App.2d 801, 805, 423 P.3d 895 (2018) (quoting In re Marriage of Possinger, 105 Wn. App. 326, 336–37, 19 P.3d 1109 (2001)). We review for abuse of discretion a trial court's decision to retain jurisdiction. Id. at 804. We may affirm on any ground supported by the record. In re Marriage of Rideout, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003).

The trial court retained jurisdiction over the parenting plan for three years, in writing at the end of the parenting plan:

> This court retains jurisdiction for a period of three years over this parenting plan. If a provision requires clarification or there is a dispute regarding whether the plan advances to the next stage, a motion shall be set before this court. Absent an emergency where this court cannot be available, all matters regarding the parenting plan shall be set before Judge Helson.

17

The trial court explained its reasons for retaining jurisdiction over the parenting plan: to clarify provisions of the parenting plan and resolve disputes, as necessary. El Gohary cites no authority requiring the trial court to make additional findings regarding retaining jurisdiction. The trial court retained jurisdiction only for a specified period—three years. The trial court acted within its discretion.

We affirm.

_____Chun, J._____

WE CONCUR:

_Andrus, A.C.J._     _Mann, C.J._