**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In re the Marriage of: | No. 86991-4-I |
| DANIEL ALEXANDER CLAYTON | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| WENDY WAN-TING CHANG, | |
| Appellant. | |

FELDMAN, J. — Wendy Chang appeals the final parenting plan entered after a trial on her modification petition. Because Chang does not establish that any of her claimed errors require reversal, we affirm.

I

Chang and her former spouse, Daniel Clayton, are the parents of triplet daughters. When the superior court dissolved their marriage in 2021, it found that Clayton "has a substance abuse issue that can interfere with his parenting." Accordingly, it entered a parenting plan that limited Clayton's decision-making authority and restricted his parenting time to every other weekend and an alternating weeknight during the school year. Additionally, the parenting plan provided that "[i]f [Clayton] relapses in his alcohol abuse by using alcohol, he shall be required to provide written notice to [Chang]."

In November 2021, Chang petitioned to modify the parenting plan, alleging that Clayton had relapsed based on, among other things, Clayton "pass[ing] out" in front of the children on August 30, 2021. The trial court later determined that Chang had established adequate cause to proceed to trial "based on detrimental environment to the children," finding that "[Clayton] has relapsed and he is actively abusing alcohol." It also ordered Clayton to undergo a substance abuse evaluation, which he later did with a provider named Kenneth Burton. Burton recommended substance use disorder treatment.

Meanwhile, the trial court ordered that Clayton's time with the children be supervised. Clayton later moved, unsuccessfully, to lift the supervision requirement. In support, he attested that he had undergone substance use disorder treatment with a provider named Christopher Scott and another evaluation with a provider named Mary Jacobs. When Clayton later renewed his motion, he also provided a neuropsychological examination report from Elizabeth Scovel, Ph.D. Before trial, Chang moved to depose Burton, Scott, and Jacobs. The trial court denied her motion.

Trial on Chang's modification petition began on July 18, 2023. At trial, the court declined to hear testimony from Burton, Scott, Jacobs, and Scovel. After trial, the court modified the parenting plan and ordered a phased-in residential schedule. The schedule required Clayton to initially submit to urinalysis before and after visitations, and it incrementally decreased restrictions on Clayton's time based on his compliance—ultimately returning to the same schedule as in the 2021 parenting plan. Additionally, the court ordered Clayton to undergo a "full-fledged

mental health evaluation . . . including psychological testing." The stated purpose of the evaluation was "to determine whether [Clayton] has any psychological issue that impairs his parenting and whether [he] has dual/multiple diagnosis in addition to alcohol use disorder." And lastly, the court's order states, "Judge Gonzales will retain jurisdiction over this case indefinitely." This timely appeal followed.

II

Chang's principal argument on appeal is the trial court erred in entering its order modifying the parenting plan and its modified final parenting plan as both orders "were prejudicially affected by" erroneous rulings. We disagree.

Our review of the trial court's rulings is largely deferential. "[D]ecisions in a dissolution action will seldom be changed upon appeal." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Such decisions are "difficult at best," appellate courts "should not encourage appeals by tinkering with them," and "[t]he emotional and financial interests affected by such decisions are best served by finality." *Id.* Furthermore, because the trial court hears the evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997)).

Here, Chang asserts that the trial court made a number of erroneous rulings before and during trial. In response, Clayton has filed a *pro se* brief in which he takes issue with Chang's characterization of the facts but does not oppose, much

less analyze, her assignments of error. Nevertheless, an error does not require reversal unless it affected the outcome in the trial court. *See Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc.*, 8 Wn. App. 2d 418, 455, 438 P.3d 1212 (2019) ("'Error without prejudice is not grounds for reversal, and error is not prejudicial unless it affects the case outcome.'" (quoting *Qwest Corp. v. Wash. Utils. & Transp. Comm'n*, 140 Wn. App. 255, 260, 166 P.3d 732 (2007))). Applying the foregoing legal principles, Chang fails to show that any of her claimed errors warrants appellate relief.

<u>First</u>, Chang contends that because Clayton waived any privilege with Burton, Scott, Jacobs, and Scovel, the trial court erred by relying on privilege to prohibit Chang from deposing these individuals and to exclude their testimony at trial. The record reflects that the reason Chang wanted to call Burton, Scott, and Jacobs was to show that Clayton was not sober when he had claimed to be, and the reason she wanted to question Scovel was also to show that Clayton was not sober, as well as to show that Clayton had a personality disorder that could be affecting his parenting functions—whether he was sober or not.

But because the trial court inferred these facts without testimony from these individuals, any error would not have affected the outcome. The trial court stated that Clayton's problems "are not secret" and described Clayton's behavior as inconsistent with someone who was "sober in recovery." And it explained that Scovel's testimony would be cumulative because the court could "infer . . . that [Clayton is] not as sober as he's telling us," and "if [Clayton is] claiming he's not intoxicated either by substance abuse other than alcohol or alcohol, then,

- 4 -

obviously, there is a co-occurring disorder that this Court wishes to investigate further before I go anywhere on any therapy plan." Later, the court reiterated, "[T]he evidence has been that there could be some mental health issues, along with co-occurring alcohol, or vice-versa, alcohol and co-occurring disorders." And in its oral ruling, it stated, "I'm well aware . . . Clayton is an alcoholic" and "that [he] more likely than not has had relapses that we don't know about. . . . [N]o doubt in my mind." In its written order, the court determined that Clayton "is an alcoholic," indicated that the court had "no idea about the extent of his recovery," and found that Clayton "has struggled with compliance." Because the trial court inferred such facts without the desired testimony, reversal is not required on this basis.

Chang nevertheless asserts that excluding Burton, Scott, Jacob, and Scovel's testimony was prejudicial because they "could have provided evidence regarding available treatments and [Clayton's] amenability to such treatments to ensure [he] achieves and maintains sobriety." But although Chang offered these witnesses' testimony to show that additional restrictions should be placed on Clayton's parenting time because he was not sober and not amenable to treatment, it does not appear that she argued that their testimony was noncumulative because it would show what treatments would help Clayton successfully achieve and maintain sobriety. This argument is unpreserved. *See* ER 103(a)(2) (error may not be predicated on a ruling excluding evidence unless a substantial right of the party is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked").

Second, Chang argues that the trial court erred by excluding testimony from Dr. Eric Norris, the physician who diagnosed Clayton with diabetes, which Clayton blamed in pretrial submissions for the August 30, 2021 loss-of-consciousness incident that precipitated Chang's modification petition. Chang's theory was that Norris diagnosed Clayton with diabetes only because Clayton, who himself is a doctor, told Norris he was diabetic. She asserts that because Clayton relied on Norris's diagnosis before trial, Clayton waived any privilege with Norris and, thus, the trial court erred by relying on privilege to exclude Norris's testimony. She argued in the trial court that "[i]f . . . [Clayton] supplies a medical record that says, 'This occurred because of diabetes,' to the Court, . . . I should be able to ask Dr. Norris, 'Where did you get the diagnosis of diabetes? Did it come from Mr. Clayton? Or did you diagnose him?'" But at trial, Clayton did not testify nor did he rely on Norris's diagnosis to explain the August 30, 2021 incident. Accordingly, whether Norris independently diagnosed Clayton is a moot point.

Third, Chang argues that the trial court "erred by not requiring [Clayton] to testify at trial or allow[ing Chang] to call him as witness on rebuttal." But neither party called Clayton as a witness in their case in chief, and Chang cites no authority for the proposition that the court was required to make him testify. As for rebuttal, Chang wished to call Clayton "to rebut the testimony of his . . . witnesses about his alcohol treatment and how he's doing," and, in particular, his witnesses' testimony that "he's been sober since 2021, and he's in treatment, and [has] glowing reports from everybody." She also wished to call him to elicit testimony "relate[d] to the reliability of [his] report about his impairment, [his] anger issues and what the

- 6 -

genesis of that is, his susceptibility to treatment and therapy, and the actual reasons for the impairment, which may be part of his alcoholism." But as discussed, the trial court had already inferred that Clayton had relapsed and had not been compliant with treatment, and it was well aware that Clayton may have a co-occurring disorder that warranted further investigation. Indeed, in declining to hear testimony from Clayton, the court implied that any such testimony would be unnecessary given the inferences it had already drawn about Clayton based on the evidence that Chang presented in her case in chief.

Fourth, Chang argues that the trial court erred by limiting the scope of the trial to facts arising after December 2021. She asserts that the trial court should have considered facts occurring since May 2021, when the original parenting plan was entered. But although the court did initially indicate that it would consider only facts arising after December 2021, the record reflects that it ultimately allowed Chang to testify about earlier events that explained why she filed her modification petition. And while Chang points out that the trial court refused to consider testimony from a school administrator who observed Clayton in an inebriated state in November 2021, additional evidence that Clayton was not sober would not have affected the outcome for reasons already discussed.

Fifth, Chang contends that the trial court erred by limiting the scope of the trial to alcohol use and relapse based on its earlier determination that Clayton's relapse was what constituted adequate cause for a modification trial. Chang points out that she was concerned that Clayton was experiencing dissociative episodes that were unrelated to—and thus could persist even in the absence of—alcohol

use. She asserts that the trial court's error in limiting the scope of trial was prejudicial because it led the court to wrongly conclude that there was "no evidence" that Clayton's dissociative episodes were not alcohol based, and although the court imposed safeguards to protect the children from Clayton's alcohol use, "the daughters are left unprotected if [Clayton] indeed has a psychological issue that impairs his parenting." She contends, in essence, that had the trial court considered her additional evidence, it would have conditioned Clayton's parenting time on his obtaining the evaluation and complying with treatment recommendations.

But although the trial court used the words "no evidence," it did so in the context of observing that any claim that Clayton's issues were not alcohol based was speculative, and Chang had presented no expert testimony to show that Clayton in fact had a disorder other than alcohol use that was causing his dissociative episodes. And Chang does not assert that any of the witnesses whose testimony she claims was wrongly excluded could have so testified. While she points out that the evidence showed Clayton was experiencing dissociative episodes while testing negative for alcohol based on hair follicle tests, even Chang's own expert testified that, although hair follicle tests would detect consistent regular alcohol use, they might not pick up binging behavior. In any case, Chang is incorrect that the children will be left unprotected if Clayton has a disorder other than alcohol use that impairs his parenting. Again, the record reflects that the trial court fully appreciated—and even shared—Chang's concern that Clayton had a co-occurring issue, and it wished to investigate that possibility

further. That is why, in its final orders, it directed Clayton to "undertake a court-ordered full-fledged mental health evaluation with a masters-level mental health professional including psychological testing" for the purpose of determining "whether [Clayton] has any psychological issue that impairs his parenting and whether [Clayton] has dual/multiple diagnosis in addition to alcohol use disorder."

Sixth, Chang asserts that the efficacy of the court-ordered evaluation is limited because it will be based largely on information provided by Clayton and because the court ordered that the evaluation would be privileged. But the court's order allows Chang to provide five pages of written input and, once the evaluator has reviewed Chang's written submission, to have a phone call with the evaluator for a duration of the evaluator's discretion. We are not persuaded that had the trial court considered additional evidence, it would have allowed Chang to provide further input. And we disagree with Chang's assertion that the court ordered that the evaluation would be privileged. The court ordered Clayton to provide the evaluator's report both to the court and to Chang's counsel immediately upon receipt, and to comply with treatment as recommended by the evaluator and file treatment compliance reports with the court. While the court's final order states that the *compliance reports* "shall not be interpreted as a waiver of privilege as to the material discussed, etc., in treatment," we do not interpret that "non-waiver" provision as applying to the *evaluation*.

Lastly, Chang contends that the trial court erred by retaining jurisdiction and that this court "should reverse the provision in the parenting plan allowing the current judge to 'indefinitely' retain jurisdiction." She asserts, correctly, that if she

files another modification action, she is entitled to a new judge upon filing an affidavit of prejudice. *In re Marriage of Rounds*, 4 Wn. App. 2d 801, 807, 423 P.3d 895 (2018). But as we observed in *Rounds*, a trial judge is "'powerless'" to deprive a parent of that right, and a judge's retaining jurisdiction does not prevent a parent from obtaining a different judge in a modification proceeding. *Id.* (quoting *In re Parenting Plan of Hall*, 184 Wn. App. 676, 678, 339 P.3d 178 (2014)). Additionally, because we find no right to relief based on alleged error below, it is unnecessary for this Court to expressly remand the matter to a different trial judge.

III

In sum, even if the trial court erred in the various ways that Chang claims it did, she fails to show that reversal is required. We affirm.

_Feldman, J._____

WE CONCUR:

_Coburn, J._____     _Smith, J._____